DRAWS v. LEVIN.

1. Physicians and Surgeons—Malpractice—Limitation of Actions—Fraudulent Concealment.

Plaintiff in malpractice action commenced over 2 years after defendant had last treated her was required to produce competent proof that he had fraudulently concealed the cause of action from her knowledge and that she brought her action within 2 years after her discovery of that cause (CL 1948, §§ 609.13, 609.20).

2. Limitation of Actions—Fraudulent Concealment.

Fraudulent concealment working a postponement of the statute of limitations must be a concealment produced by affirmative acts or misrepresentations when the basis of the action is some wrong other than a fraud (CL 1948, §§ 609.13, 609.20).

3. Same—Fraudulent Concealment—Fraud—Silence.

The defendant's original fraud in a cause of action based upon a fraud perpetrated upon a plaintiff is regarded as a continuing affirmative act working a postponement of the statute of limitations and the mere silence of defendant is treated as a concealment (CL 1948, §§ 609.13, 609.20).

4. Physicians and Surgeons — Malpractice — Thyroidectomy — Post-Operative Treatment.

Record in malpractice action based upon a thyroidectomy and post-operative treatment therefor, held, to sustain trial judge's finding that plaintiff had failed to establish any fraudulent concealment of any right of action plaintiff might have had (CL 1948, §§ 609.13, 609.20).

5. Appeal and Error—Wrong Reason for Correct Result.

The trial court's assignment of a wrong reason for a correct result does not affect the disposition of the case in the Supreme Court.

---

References for Points in Headnotes
[1–4, 6] 34 Am Jur, Limitation of Actions §§ 231, 234; 41 Am Jur, Physicians and Surgeons § 123.
[1–4, 6] When statute of limitations commences to run against actions against physicians, surgeons, or dentists for malpractice. 74 ALR 1317; 144 ALR 209.
[2, 3] 34 Am Jur, Limitation of Actions § 234.
[2, 3] What constitutes concealment which will prevent running of statute of limitations. 173 ALR 576.

6. Same—Directed Verdict—Malpractice—Fraudulent Conceal-
    ment—Evidence—Limitation of Actions.
  A directed verdict for defendant physician on the sole ground
    that the action for malpractice was not commenced within 2
    years from the date he had last treated plaintiff following
    performance of thyroidectomy might have been ordered by the
    trial judge in the absence of any proof of fraudulent conceal-
    ment postponing the working of the statute of limitations, but
    his direction of the verdict for another reason is not disturbed
    (CL 1948, §§ 609.13, 609.20).

Appeal from Houghton; Brennan (Leo J.), J.
Submitted January 16, 1952. (Docket No. 66, Cal-
endar No. 44,889.) Decided March 6, 1952. Rehear-
ing denied May 16, 1952.

Action by Rita Draws against Simon Levin for
malpractice. Directed verdict and judgment for de-
fendant. Plaintiff appeals. Affirmed.

*Joseph M. Donnelly* (*S. W. Patek*, of counsel), for
plaintiff.

*Humphreys Springstun* and *Petermann & McClel-
land*, for defendant.

Bushnell, J. Plaintiff Rita Draws began a mal-
practice action on September 8, 1945, against Dr.
Simon Levin. She has appealed from a judgment
entered upon a directed verdict in favor of the de-
fendant.

Miss Draws, who had enjoyed good health since
childhood, developed symptoms of toxic goiter when
she was about 26 years old. She consulted Dr. Stern,
who sent her to Dr. Levin of Houghton, Michigan.
He performed a thyroidectomy on October 19, 1939,
at St. Joseph's hospital in Hancock, Michigan. On
the third day after this operation, the muscles of
her limbs tightened, her neck stiffened in one posi-
tion, she experienced great difficulty in breathing,

and became unconscious. This was her only attack during the 21 days she was in the hospital.

Plaintiff had similar seizures about once a week for the first 4 weeks after she returned to her home. Dr. Levin attended her until 1941. During this period she had numerous attacks, sometimes as many as several in one day. Dr. Levin prescribed digitalis, an iodine preparation called "lugols," vitamin B complex, spirits of ammonia, and dicalcium phosphate.

In December of 1941, when Dr. Levin was unavailable, she was treated by Dr. Janis, who prescribed calcium gluconate, parathyroid tablets, and phenobarbital. The convulsions did not recur until 3 months later. Dr. Janis continued to treat her, and in the fall of 1942 hospitalized her for observation, after which she was free from attacks for several more months. Subsequent convulsions ceased after Dr. Janis administered intravenous injections of calcium gluconate.

In October of 1943, another severe attack occurred while plaintiff was on a trip. On this occasion she obtained relief by injections of parathyroid extract. Plaintiff was admitted to the Michael Reese hospital in Chicago on December 13, 1945. She was examined and treated by Dr. Mathew Taubenhaus, Dr. David Wagner, and Dr. Joseph P. Reich. Their treatment consisted of medications of calcium gluconate, hytakerol, ammonium chloride, and parathyroid extract. Plaintiff remained in this hospital for about 30 days. She only had 2 more attacks, one about 6 months after her return from Chicago and another a year later.

In the summer of 1945, Miss Draws told Dr. Levin that she had been to another physician who informed her that her parathyroid glands "were injured or removed."

Plaintiff's witnesses, Doctors Taubenhaus and Wagner, testified that the parathyroid glands, if imbedded in the thyroid, may be injured or removed in a thyroidectomy regardless of the skill of the surgeon; the parathyroid glands indirectly control muscle irritability by regulating the calcium and phosphorus content of the blood; hypoparathyroidism may follow such injury or removal of the parathyroid glands and cause a calcium deficiency resulting in tetany and convulsions.

Plaintiff testified regarding her conversation with Dr. Levin as follows:

"He said he was very sorry it had happened. He said 'Believe me, it was a mistake. It was not intentional.' He said 'he was very sorry.' He said 'Whatever you do, don't tell my wife. My wife has so much faith in me that it would hurt her.'"

Plaintiff's action was begun on September 8, 1945. A "more specific declaration" was filed on November 16, 1946. This declaration contained 3 counts, the first for malpractice in connection with the operation; and the others for improper post-operative diagnosis, care and medication. In these counts defendant is charged with having "deceived and misled plaintiff" by statements regarding her condition, which were "untrue and known by the defendant to be so." Defendant's motion to dismiss plaintiff's declaration was granted only as to the first count.

After the court's decision on this motion, defendant's answer was filed. In paragraphs 1 and 6 of the answer to the second count of plaintiff's "more specific declaration," defendant averred:

"That because of the allegations contained in this section that this action is barred by the statute of limitations."

In the answer to the third count the defendant averred:

"That the allegations therein contained are insufficient both as a matter of fact and as a matter of law to constitute fraudulent concealment and to avoid the statute of limitations, and he again avers that this action is barred by said statute of limitations."

At the close of plaintiff's proofs the trial judge, on motion of defendant, directed the jury to return a verdict for the defendant.

After plaintiff had made a certain offer of proof the trial judge stated that answers to the proposed questions would not be admitted in evidence. He then stated:

"I will add at this point that counsel has referred to the statute of limitations which applies in cases of this kind. The court finds that the plaintiff has utterly failed to establish any fraudulent concealment. Fraudulent concealment in cases such as this means the employment of artifice planned to prevent inquiry or escape investigation and mislead or hinder acquirement of information disclosing a right of action, which acts must be of an affirmative character and fraudulent.

"It is not necessary for the court to dwell longer on this phase of the case. I might add at this time, however, that I am extremely doubtful whether or not this case even comes within the time limit for such an action, or under the appropriate statute of limitations."

The statute of limitations (CL 1948, § 609.13, subd 3 [Stat Ann 1949 Cum Supp § 27.605]) requires:

"Actions * * * for malpractice of physicians, surgeons or dentists * * * shall be brought within 2 years from the time the cause for action accrues, and not afterwards."

CL 1948, § 609.20 (Stat Ann § 27.612) provides:

"If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter."

Dr. Levin did not treat Miss Draws after December 5, 1941. She stated that she did not see him again until the summer of 1945. She did not bring her action until September 8, 1945. In order to support her claim for damages she was required to produce competent proof that Dr. Levin fraudulently concealed the cause of such action from her knowledge, and that she brought her action within 2 years after her discovery of that cause.

She offered, but was not permitted, to testify that the first time she had any reason to believe that she had a cause of action was when she was treated in October of 1943 by Dr. C. K. Stroup at Flint, Michigan. The exact date is not disclosed. Assuming the date of discovery to be sometime in October of 1943, and also assuming that the trial judge erroneously excluded that testimony, nevertheless we still must also find in this record proof of fraudulent concealment in order to toll the statute of limitations.

" 'When the basis of the action is some wrong other than a fraud, the fraudulent concealment which will work a postponement of the statute must be a concealment produced by affirmative acts or misrepresentations. A mere silence on the part of the defendant is not enough. The plaintiff must show some arrangement or contrivance on the part of the defendant, of an affirmative character, designed to prevent subsequent discovery. The rule in question

prohibits the defendant from doing at any time anything to prevent the plaintiff from ascertaining subsequently to the transaction out of which the right of action arises the facts upon which it depends, either by affirmative action which conceals the truth, or by any device which avoids inquiry that would lead to a discovery. Where, however, the basis of the action is a fraud perpetrated by the defendant, the original fraud is regarded as a continuing affirmative act, and mere .silence of the defendant is treated as a concealment.'" *Dowse* v. *Gaynor,* 155 Mich 38, 43.

This rule was applied in *DeHaan* v. *Winter,* 258 Mich 293, 296 (action for malpractice). The Court said:

"Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of the information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent."

This statement was quoted and applied in *McNaughton* v. *Rockford State Bank,* 261 Mich 265, and in *Barry* v. *Detroit Terminal Railroad Co.,* 307 Mich 226.

The latest application of this rule is in a malpractice case, where the sufficiency of the declaration was questioned. See *Buchanan* v. *Kull,* 323 Mich 381.

We agree with the finding of the trial judge that plaintiff has "utterly failed to establish any fraudulent concealment." He also found that plaintiff had "failed to show any actionable negligence."

The trial judge, in the absence of any proof of fraudulent concealment, might have properly directed a verdict for the defendant on the sole ground that the action was not begun within the statutory period of 2 years from December 5, 1941.

"The fact that the trial court assigned a wrong reason for a correct result does not affect the disposition of the case in this Court. *H. H. King Flour Mills Co.* v. *Bay City Baking Co.,* 240 Mich 79." *Goldman* v. *Grand Trunk Western R. Co.,* 287 Mich 289, 296.

"The record in this case does not disclose upon what point the court directed the verdict, but, as the correct result was reached, we will not disturb it." *Bergstrom* v. *Staples,* 82 Mich 654.

"Whether all the reasons given by the court and his statements made in arriving at his conclusion to direct a verdict * * * were the correct ones or not is immaterial. He was right in his conclusion, and properly directed a verdict." *Illinois Roofing & Supply Co.* v. *Aerial Advertising Co.,* 142 Mich 698.

We have examined all of plaintiff's claims of error, but because of our conclusion, it is unnecessary to discuss them.

The judgment entered upon the directed verdict is affirmed, with costs to appellee.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.