## WINFREY *v.* FARHAT.

1. PHYSICIANS AND SURGEONS—MALPRACTICE—STATUTE OF LIMITA-
TIONS—DISCOVERY RULE.
    Limitation statutes in malpractice cases do not start to run
        until the date of discovery, or the date when, by the exercise
        of reasonable care, plaintiff should have discovered the
        wrongful act.

2. SAME—MALPRACTICE—QUESTION OF FACT—SUMMARY JUDGMENT.
    Summary judgment must be denied where a jury could come
        to more than one conclusion based upon the testimony of
        plaintiff in an action against a doctor for malpractice and
        the sworn affidavits of several treating doctors.

3. SAME—MALPRACTICE—DISCOVERY OF WRONGFUL ACT—JURY QUES-
TION.
    Determination of when plaintiff discovered or should have dis-
        covered in the exercise of reasonable care that defendant
        doctor had not removed her cystic duct while removing her
        gall bladder was a question of fact for the jury where there
        was conflicting lay and medical testimony as to the issue of
        discovery by plaintiff.

4. SAME—MALPRACTICE—STATUTE OF LIMITATIONS—CAUSE OF AC-
TION—LAST TREATMENT RULE—DISCOVERY RULE.
    Statute which provides that a claim based on malpractice of
        a person holding himself out as a member of a State licensed
        profession accrues when that person discontinues treatment
        of plaintiff in a professional capacity as to matters from
        which the claims of malpractice arose did not become effec-
        tive until 1963; thus, where plaintiff's malpractice claim
        arose out of an act done before 1963, this statute would not

REFERENCES FOR POINTS IN HEADNOTES

[1, 4]  41 Am Jur, Physicians and Surgeons §§ 122, 123.
    Statute of limitations applicable to malpractice action against
        physician, surgeon, dentist, or similar practitioner.   80 ALR2d
        320.
[1, 3]  41 Am Jur, Physicians and Surgeons § 132.
[2]  53 Am Jur, Trial § 293 *et seq.*

apply and plaintiff may assert, enforce, and prosecute her claim under the Court-approved discovery rule as if the statute had never been passed (CLS 1961, §§ 600.5838, 600.9905 [1]).

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Quinn and Moody, JJ., affirming Genesee, Freeman (Donald R.), J. Submitted April 11, 1969. (Calendar No. 11, Docket No. 52,075.) Decided September 3, 1969.

11 Mich App 579, reversed.

Complaint by Iva M. Winfrey and Lillard L. Winfrey against Dr. Maynard M. Farhat for malpractice. Accelerated judgment for defendant. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Reversed and remanded for further proceedings.

*Howard C. Fisher* (*Sydney N. Lyttle,* of counsel), for plaintiffs.

*Cline & Cline* (*Charles A. Forrest, Jr.,* of counsel), for defendant.

PER CURIAM.

### 1. *Facts and Proceedings.*

On July 30, 1949, defendant Farhat, a practicing physician, performed a cholecystectomy (removal of gall bladder) upon plaintiff Iva M. Winfrey. The operation was unsuccessful in relieving plaintiff's distress. Plaintiff continued to treat with Dr. Farhat until March, 1954, when she went to Dr. Ralph C. Johnson. After six years with him, she went to Dr. Julius Schwartz who referred her, in 1964, to

Dr. Allan G. Silverton. In 1965, she changed to Drs.
Nitz, Coriasso, and James. Dr. Nitz referred her
to Dr. R. E. L. Berry, who performed surgery June
17, 1965. Dr. Berry found the cystic duct had not
been removed by Dr. Farhat. With the remnant
removed, plaintiff has enjoyed good health.

On January 24, 1966, complaint was filed in the
Genesee county circuit court alleging negligence in
the operation and claiming the negligence was not
discovered until June 17, 1965. Defendant pled the
statute of limitations and filed motion for summary
judgment. At the hearing on the motion, defendant
submitted plaintiff's deposition taken by the de-
fense. Plaintiff submitted affidavits of Dr. Silverton
and Dr. Johnson. On April 11, 1967, the trial judge
granted the motion. His opinion states:

"The plaintiff Winfrey, by the exercise of reason-
able care, should have discovered the wrongful act
timely, and having failed to do so, the defendant's
motion is hereby granted."

Upon appeal to the Court of Appeals, that court
affirmed by per curiam opinion, stating:

"The record on appeal contains uncontroverted
facts which establish that plaintiff Iva M. Winfrey's
claim was barred by the statute of limitations." 11
Mich App 579, 580.

Leave to appeal to this Court was granted on
September 30, 1968. 381 Mich 780.

## 2. *The Law.*

There is no dispute as to the law in this case. Both
plaintiffs and defendant recognize that the discovery
rule, as stated by this Court in *Johnson* v. *Caldwell*
(1963), 371 Mich 368, 379, is applicable. In that case
this Court said:

"Simply and clearly stated the discovery rule is:
The limitation statute or statutes in malpractice
cases do not start to run until the date of discovery,
or the date when, by the exercise of reasonable care,
plaintiff should have discovered the wrongful act."

Plaintiffs maintain the date of discovery was when
the second operation was performed on Mrs. Win-
frey. Defendant maintains she should have discov-
ered the claimed wrongful act by the exercise of
reasonable care long before then.

### 3. *Was the Discovery Date Uncontroverted on the Motion for Summary Judgment?*

Mrs. Winfrey's deposition, taken by the defendant,
presents a candid picture of her experiences from
the time when she went to Dr. Farhat in June of
1949 until she finally obtained relief on June 17,
1965. In connection with her treatment by Dr.
Johnson after she left Dr. Farhat, she testified:

"*Q.* How long did you stay with Dr. Johnson?

"*A.* I stayed with him about 6 years.

"*Q.* And he didn't do anything for the gall
bladder?

"*A.* He didn't do nothing for my gall bladder, no.
X-rayed it.

"*Q.* X-rayed it?

"*A.* And he said it was still in there.

"*Q.* He said it was still in there? Did he suggest
he wanted to take it out?

"*A.* Well, he said that it should come out but I
argued that it wasn't in there, definitely. Every
doctor I went to, I told them the gall bladder and
the duct absolutely wasn't in there because Farhat
removed it, it was supposed to have been removed.

"*Q.* And he took some X-rays and said it was
there?

"*A.* Yes, sir.

"*Q.* Did he suggest that you ought to be re-operated?

"*A.* He didn't suggest it should be operated, no, not at the present time, no."

In connection with her treatment by Dr. Nitz, Mrs. Winfrey testified:

"*Q.* Did you talk about your gall bladder with them?

"*A.* Yes, sir.

"*Q.* What was your conversation with Nitz, for instance?

"*A.* He X-rayed, he said the duct possibly was there and they still argued up and down the gall bladder and duct was in, and I said it couldn't possibly be, it was removed; that's all I could say.

"*Q.* Did they ever suggest you should be re-operated?

"*A.* Yes, sir.

"*Q.* You accepted?

"*A.* No.

"*Q.* Why wouldn't you be operated?

"*A.* Not then, I was too scared. Later on I did."

Upon further questioning by the attorney for defendant, Mrs. Winfrey testified:

"*Q.* Just a couple things; after you left Dr. Farhat in November of 1953 you went to Dr. Johnson, didn't you?

"*A.* Yes, sir.

"*Q.* And Dr. Johnson had done—Dr. Johnson, did he X-ray you?

"*A.* Yes, sir.

"*Q.* Did he tell you that you should have this gall bladder out?

"*A.* Yes, sir.

"*Q.* All right. Do you remember when that was, first of all, he told you you had a gall bladder, I take it; did he tell you that, what was wrong with you?

"*A.* He said what was wrong with me.

"*Q.* Did he tell you you ought to have it out?

"*A.* He definitely did but I wouldn't.

"*Q.* But you wouldn't but he told you this. Now, you went to Dr. Johnson in 1953, didn't you?

"*A.* Yes, sir—I don't remember when it was.

"*Q.* It was right after you left Dr. Farhat anyway, wasn't it?

"*A.* Yes, sir.

"*Q.* So it was in the 1950's some time?

"*A.* Yes, sir, I would say in the 1950's some time.

"*Q.* And he X-rayed you, I asked you that?

"*A.* Yes, sir.

"*Q.* But you decided you couldn't face that operation?

"*A.* Sure did.

"*Q.* All right. Then when you went to Dr. Schwartz and you went to Dr. Schwartz in about 1960, if I can remember?

"*A.* Yes, sir.

"*Q.* He had you X-rayed by Dr. Silverton?

"*A.* Yes, sir.

"*Q.* And he told you that you had this gall bladder and you ought to have it out?

"*A.* Yes, sir.

"*Q.* Isn't that right?

"*A.* Yes, sir.

"*Q.* You told him no, you weren't ready to be operated on again because you were afraid of that?

"*A.* Yes.

"*Q.* And then you went to Dr. Nitz?

"*A.* Yes, sir.

"*Q.* When did you go to Dr. Nitz again, do you remember?

"*A.* I went to Dr. Nitz, I would say in about 1960, and about 1961, I would say I started going to Dr. Nitz something like that.

"*Q.* And Dr. Nitz told you you had the gall bladder, I take it?

"*A.* Yes, sir.

"*Q.* And he also said it should be operated and removed?

"*A.* Yes, sir.

"*Q.* And this was what your trouble was?

"*A.* Yes, sir.

"*Q.* Then finally in 1965, why, Dr. Berry got in the act and the gall bladder was removed?

"*A.* Yes, sir.

"*Q.* Is that about the chronological—is that about the way it was?

"*A.* Yes, sir.

"*Q.* Well, you knew then that this gall bladder or this duct was there when Dr. Johnson told you, didn't you?

"*A.* Yes, sir.

"*Q.* Okay. And again when Dr. Schwartz told you and again when Dr. Nitz told you?

"*A.* Yes, I didn't want to be operated on any more.

"*Q.* Okay.

"*A.* Until I had to.

"*Q.* You're feeling pretty good now?

"*A.* Oh, I am doing fine now."

At the same time the trial judge had the above testimony of plaintiff before him for consideration on the motion for summary judgment, there had also been submitted to him the sworn affidavits of Drs. Johnson and Silverton. The pertinent portion of Dr. Johnson's affidavit reads:

"Deponent states that he treated Mrs. Iva M. Winfrey from March 14, 1954 until April 29, 1960 and that during this time he treated her for many different conditions. On only one occasion did she complain of anything which could have been consistent with biliary difficulty. This consisted of a bloating and distended feeling in the upper abdomen and bile salts were prescribed for treatment.

"Deponent further states that at no time did he even discuss gall bladder or bile duct disease with Mrs. Winfrey, nor did he ever tell her that her gall

bladder or a cystic duct remnant was causing her any difficulty in any way, or inform her or intimate to her that the gall bladder or cystic duct had not been removed."

The pertinent portion of Dr. Silverton's affidavit reads:

"Allan G. Silverton * * * deposes * * * that he knows Iva M. Winfrey, one of the plaintiffs in the above entitled matter, and has seen her in the practice of his profession, that he first saw her at the request of Dr. Julius D. Schwartz, D. O., on January 23, 1964 with a complaint of recurrent attacks of pain in the right upper abdominal quadrant and at the time of her first visit, told Mrs. Winfrey that the pain might be due to a retained cystic duct remnant.

"Deponent states that he had Mrs. Winfrey admitted to Flint Osteopathic Hospital on January 29, 1964 and that she remained there until January 31, 1964 undergoing tests and X-rays. The radiologist reported visualization by an intravenous cholangiogram of the biliary system. The gall bladder did not visualize nor did the cystic duct. The remainder of the biliary tract appeared normal.

"Deponent further states that in view of the fact that the cystic duct did not visualize, that he did not feel that surgical intervention was indicated and so informed Mrs. Winfrey."

Summary judgment must be denied where there are disputed issues of material fact. A jury could come to more than one conclusion based upon just the statements of Mrs. Winfrey. While it is true that she said that various doctors had told her the gall bladder was still in her, she also said, "Every doctor I went to, I told them the gall bladder and the duct absolutely wasn't in there because Farhat removed it, it was supposed to have been removed." Dr. Johnson and Dr. Silverton had the benefit of

their records to refresh their recollection: Dr. Johnson states unequivocally that "at no time did he even discuss gall bladder  *  *  *  with Mrs. Winfrey,  *  *  *  or inform her  *  *  *  that the gall bladder or cystic duct had not been removed." Dr. Silverton states that on January 29, 1964 he had Mrs. Winfrey X-rayed. "The gall bladder did not visualize nor did the cystic duct.  *  *  *  He did not feel that surgical intervention was indicated and so informed Mrs. Winfrey."

At what point of time can it be said that, as a matter of law, Mrs. Winfrey became obligationally aware of the facts of defendant's "wrongful act"? It might be concluded that, by exercising reasonable care, Mrs. Winfrey should have discovered the defendant-surgeon's "wrongful act" within the rule of *Johnson* v. *Caldwell* years before the second operation. It might also be concluded that the date of discovery of defendant's "wrongful act" did not occur until the performance of the second operation and report to her of the definitely ascertained fact.

In view of the conflicting lay and medical testimony, the issue as to the time of discovery or, alternatively, when Mrs. Winfrey, in the exercise of reasonable care, should have determined the defendant's "wrongful act," was one of fact for the jury.

## ADDENDUM.

After submission of this case to this Court and oral argument, the Court instructed the clerk of the Court to request supplemental briefs by a communication to counsel reading in part as follows:

"Counsel are requested to file supplemental briefs with regard to the applicability of PA 1961, No 236, § 5838 (CLS 1961, § 600.5838, Stat Ann 1962 Rev § 27A.5838) effective January 1, 1963, to decision in the above case.

"Counsel's attention is directed to *Quinlan* v. *Gudes* (1966), 2 Mich App 506; to an article entitled 'Civil Procedure,' by Roger A. Needham, Vol II, 1964–1965, p 36, Wayne Law Review; 'Revised Judicature Act: Special Proceedings and Appeals, 1964 Supplement,' pp 173–176, by Roger A. Needham; and to PA 1961, No 236, § 9905 (CLS 1961, § 600.9905, Stat Ann 1962 Rev § 27A.9905)."

In accordance with the above request, supplemental briefs have been submitted and considered.

Section 5838 above referred to reads as follows:

"A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose."

Section 9905(1) reads as follows:

"Except as specifically stated or reasonably inferred from the provisions of this act, this act shall not impair or affect any act done, offense committed or right accruing, accrued, or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted, or inflicted as if this act had not been passed."

In *Johnson* v. *Caldwell, supra,* this Court re-examined "the last treatment rule as determinative of the time of the accrual of the cause of action and the correlative time when the limitation statute or statutes begin to run." The Court thereupon adopted the discovery rule hereinabove quoted.

We conclude that since the plaintiff's claims arose out of an act done prior to January 1, 1963 (the effective date of the RJA), in view of the provision of

section 9905, section 5838 is not applicable. The discovery rule is.

The Court of Appeals, and the trial judge erred. They are reversed. The case is remanded to the trial court for further proceedings. Costs to plaintiffs and appellants.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.