CATES v FREDERICK W. BALD ESTATE

1. LIMITATION OF ACTIONS—MALPRACTICE.

The statute of limitations for a malpractice action begins to run only when the plaintiff discovers, or by the exercise of reasonable care should have discovered, the asserted malpractice, whichever is later.

2. LIMITATION OF ACTIONS—MALPRACTICE—JUDGMENT—ACCELERATED JUDGMENT—QUESTION OF FACT.

The statute of limitations did not clearly bar a malpractice action and an accelerated judgment was improperly granted where there was a question of whether the plaintiff knew of the presence of a surgical needle in her abdomen longer than two years before starting the action (MCLA 600.5805).

3. PHYSICIANS AND SURGEONS—MALPRACTICE—QUESTION OF FACT.

It was a question for the jury whether a plaintiff had knowledge of, or should have had knowledge of, the presence of a surgical needle in her abdomen, left from a prior operation, where the plaintiff alleged that she was consistently misled with regard to the needle's presence and that she had relied upon the advice given her by the defendant doctors, and that they concealed the information from her.

Appeal from Genesee, Thomas C. Yeotis, J. Submitted Division 2 June 6, 1974, at Lansing. (Docket Nos. 17515, 17516.) Decided August 13, 1974. Leave to appeal applied for.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 181–185.

Statute of limitations applicable to malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 320.

Applicability, to negligence action against hospital, or statute of limitations applicable to malpractice and related actions against physicians, surgeons, or the like. 89 ALR2d 1180.

[2, 3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 213.

Complaints by Geneva Cates and Norvel Cates against the estate of Frederick W. Bald, Robert E. Anderson, Erwin J. Gutowitz, Orestes Iung, Henry Ford Hospital, and R. F. Gluckman for medical malpractice. Judgment for defendants. Plaintiffs appeal. Judgment vacated and remanded.

*Shanahan & Scheid,* for plaintiffs.

*Kitch, Suhrheinrich & Getto, P. C.* (by *Ronald F. DeNardis),* for defendants Orestes Iung, R. F. Gluckman, and Henry Ford Hospital.

*Cline & Cline* (by *Walter P. Griffin),* for defendant estate of Frederick W. Bald.

Before: QUINN, P. J., and R. B. BURNS and O'HARA,* JJ.

O'HARA, J. This is a medical malpractice case. The original malpractice charged occurred in 1949. A surgical needle 4 to 5 centimeters long was left in the lower quadrant of plaintiff's abdomen. The operating surgeon is deceased.

The specific grounds of negligence seem to be fraudulent concealment of the presence of the needle from the patient. This despite the fact that there is the admission in plaintiff wife's deposition that she told two of the treating doctors of the presence of the needle over the period specifically in 1962 and in 1969.

As to defendant Ford Hospital it is alleged that in transmitting the report of the findings made there at the request of a subsequent treating physician it omitted all reference to the presence

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

of the foreign body which was in fact known to it through members of its staff.

Finally in October, 1970 she consulted still another physician. She did not tell him of her knowledge of its presence. He discovered it and called in a surgeon. She was operated on in April, 1971 and the needle was removed. So the complaint says her symptoms, which incontestably were grave and her suffering very real, disappeared. She now enjoys good health.

This is a vexatious case. Limitations upon the time within which to bring actions are not to be taken lightly. Stale claims are tremendous burdens on defendants. See *Bennett v Carpenter,* 45 Mich App 552; 206 NW2d 803 (1973). Yet in medical malpractice cases[1] the literal reading of the statute[2] has been modified with good reason. In the case at bar a psychiatrist of national repute and a recognized authority in his field of doctor-patient relationships testified that plaintiff had been "programmed" out of taking any definitive action even though there is persuasive depositional testimony that in the ordinary sense of the term she "knew" of the presence of the foreign body at a time that would bar any action for medical malpractice. To this extent the question is one of first impression in this state.

There is no doubt that the totality of the material which should be considered by the trial judge fairly drips with disputed questions of fact. There is a plethora of "He did" and "He did nots", "She did" and "She did nots" and more than a sprin-

---

[1] MCLA 600.5805; MSA 27A.5805 prescribes a two-year limitations period in malpractice actions. The pertinent provision as to when a malpractice claim accrues is contained in MCLA 600.5838; MSA 27A.5838.

[2] MCLA 600.5838; MSA 27A.5838.

kling of "I don't knows" and "I don't remembers"
—this last understandably.

The question is are there disputed material facts
as the rule requires?

One of the difficulties is that the pleadings don't
seem to pinpoint the issues. This is particularly
true of the last amended and controlling com-
plaint. It has an overlay of alleged conspiratorial
withholding of information, support of which we
candidly opine is lacking.

The whole thing boils down to this: If we read
the complaint strictly and in what is usually
termed the literal sense the trial judge was right
and the grant of "summary judgment and/or ac-
celerated judgment" should be affirmed.

If, per contra, we read and construe it liberally,
there is no bar to proceeding with the cause of
action and there is depositional support for the
creation of a material fact issue.

Curiously enough the case we think is disposi-
tive is cited in neither brief nor by the trial judge.
Curiously enough also it is not mentioned by the
Supreme Court in its recent opinion, *Dyke v Rich-
ard,* 390 Mich 739; 213 NW2d 185 (1973), which
reiterates almost verbatim the language of a unan-
imous Supreme Court when it first promulgated
the rule that the statute begins to run only when
the plaintiff discovers or by the exercise of reason-
able care should have discovered the asserted mal-
practice, whichever is later. We refer to *Johnson v
Caldwell,* 371 Mich 368; 123 NW2d 785 (1963).
Particularly we have reference to the following
language:

"The grave inequities which could follow the applica-
tion of the last treatment rule are well illustrated by
the case at bar. Plaintiff testified, as pointed out earlier,
'I accepted his [defendant's] word [that] nothing could

be done for it.' As phrased in *Ayers v Morgan,*[3] *supra,* p 285, *it would be 'illogical and unintelligent' to require a patient to determine on the date he last consults a physician that malpractice has taken place, when he in fact relies upon the advice that constitutes the malpractice. So to hold would punish the patient who relies upon his doctor's advice and places a premium on skepticism and distrust.*

"Plaintiff, a 21-year-old girl, delivered of her first child and experiencing *post partum* difficulty relied on what the trier of facts determined to be the doctor's advice that 'nothing could be done about it'." 371 Mich at 379–380; 123 NW2d at 791 (emphasis supplied).

Such is almost the precise situation here. Of course, as we said earlier, in the usual sense of the word plaintiff knew of the presence of the foreign body long before the cause of action would have been outlawed by the statute. But the question abides how could she know it was malpractice (if it was) to be told "you forget about that needle" and "your trouble is nothing but nerves" and in the case of some defendants no reference at all to its presence even though its presence was known to them?

There is depositional reference to "encapsulation" of the needle and its effect upon her symptoms as she relayed them to the long list of treating doctors and the hospital.

We have read every deposition line by line. We have analyzed and reanalyzed the pleadings. We have studied with care the opinion of the learned trial judge.

In finality we have concluded that under the majority holding in *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973), which quotes with approval the language of Mr. Justice SOURIS in *Durant v Stahlin,* 375 Mich 628; 135 NW2d 392

---

[3] *Ayers v Morgan,* 397 Pa 282; 154 A2d 788 (1959).

(1965), thus making it precedent which is binding on us, we are obligated to reverse. We quote the excerpt from *Rizzo, supra:*

"By insisting that summary judgment is not available whenever a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken, *we intend thereby to limit severely the circumstances in which summary judgment properly may be entered.* The alternative would require our abandonment of what has been called the 'truth-testing process of cross-examination' and would encourage unwarranted invasion by judges of the jury's exclusive province. *United States v United Marketing Association,* 291 F2d 851, 853–854 (CA 8, 1961)." 389 Mich at 373; 207 NW2d at 320–321. (Emphasis supplied in *Rizzo.)*

Strictly speaking what is involved here is an accelerated judgment.[4] The trial judge denominated it "summary judgment and/or accelerated judgment" in his opinion. No matter which is involved the interdiction against the invasion by the judge of the jury's exclusive province is still violated.

The order granting accelerated judgment is vacated. The cause is remanded to the trial court for further proceedings. Costs to the appellants.[5]

All concurred.

---

[4] GCR 1963, 116.1(5).

[5] Originally there were two complaints filed; one on behalf of the wife and one on behalf of the husband. They were by order consolidated and our disposition applies to the case of both husband and wife.