WALERYCH v ISAAC

1. PHYSICIANS AND SURGEONS—MALPRACTICE—STATUTE OF LIMITA-
   TIONS—STATE LICENSES—DISCONTINUATION OF TREATMENT—DIS-
   COVERY OF MALPRACTICE.

   An action for malpractice by a state licensed person must be
   brought within two years of the time when such person discon-
   tinues treating or otherwise serving the plaintiff, or within two
   years of the time when the plaintiff discovers or in the exercise
   of reasonable diligence should have discovered, the asserted
   malpractice, whichever is later; therefore, a plaintiff who
   waited more than two years to discover the identity of a
   defendant physician after he knew that he might have a cause
   of action for medical malpractice was barred by statute from
   bringing suit against that physician (MCLA 600.5805[3]).

2. PHYSICIANS AND SURGEONS—MALPRACTICE—STATUTE OF LIMITA-
   TIONS—FRAUDULENT CONCEALMENT.

   A plaintiff has two years from the time of discovery of a defend-
   ant's identity within which to bring an action against the
   defendant where the identity of the defendant has been fraudu-
   lently concealed from him; fraudulent concealment means em-
   ployment of artifice, planned to prevent inquiry or escape
   investigation and mislead or hinder acquirement of the infor-
   mation disclosing a right of action, which acts must be of an
   affirmative character and fraudulent.

3. PHYSICIANS AND SURGEONS—PHYSICIAN-PATIENT RELATION—FRAUD-
   ULENT CONCEALMENT.

   A higher standard is applied where fraudulent concealment of a
   cause of action by a physician is charged than where fraudu-
   lent concealment is alleged between parties dealing at arm's
   length.

Appeal from Oakland, Robert L. Templin, J.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 181–
185.

Submitted April 17, 1975, at Detroit. (Docket No. 22250.) Decided August 14, 1975. Leave to appeal denied, 395 Mich 776.

Complaint by Lorena Walerych, administratrix of the estate of Daniel R. Hempton, deceased, against Herbert Isaac for damages for medical malpractice. Accelerated judgment for defendant. Plaintiff appeals. Affirmed.

*Lopatin, Miller, Bindes & Freedman* (by *Michael A. Gantz),* for plaintiff.

*Wilson, Portnoy, Basso & Leader, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and QUINN and R. M. MAHER, JJ.

PER CURIAM. Plaintiff appeals an order granting defendant's motion for accelerated judgment. The two-year limitation on malpractice actions, MCLA 600.5805(3); MSA 27A.5805(3), was the basis of that order. We must consider the applicability of *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973), and MCLA 600.5855; MSA 27A.5855 to the facts out of which this action arises.

Plaintiff's decedent sought medical assistance at Pontiac General Hospital's emergency room in January, 1970, complaining of headaches, dizziness and other problems. Several physicians saw him, the last being defendant, who diagnosed his condition as flu and sent him home. Later that month, plaintiff's decedent died, allegedly from an acute bacterial infection. In May, 1974, plaintiff brought this action, alleging defendant's malpractice in the diagnosis and treatment of decedent's ailments.

In December, 1971, plaintiff brought suit against Pontiac General Hospital, Dr. Mathura and Drs.

John Doe and Mary Roe. The hospital records subpoenaed included an emergency room report on decedent. On that report, in the block marked "Signature of Doctor", is the stamped name "Blakeney". Below that is written "Blakeney/Isaac". Plaintiff's complaint was amended in January, 1972, to name Pontiac General Hospital, Dr. Mathura and Dr. Isaac Blakeney as defendants. In June of 1972, the complaint was amended a second time, naming the hospital, Dr. Mathura and Dr. James Blakeney as defendants. The depositions of Dr. Blakeney and Dr. Mathura were taken by plaintiff in January, 1973, and defendant's deposition was taken in July of that year. On May 15, 1974, plaintiff's complaint against Dr. Isaac was filed.

Plaintiff first contends that the date of discovery rule set forth in *Dyke v Richard, supra,* is applicable, and that two years have not elapsed since the discovery of defendant's identity. In *Dyke, supra,* 747, the Supreme Court stated:

"Accordingly we hold that an action based on malpractice by a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later."

Implicit in the Supreme Court's opinion is the recognition that in the area of malpractice there is often difficulty in determining whether a wrong has occurred. Great lengths of time may pass before the results of professional errors become apparent to laymen. The Court felt that to bar an

action before a person even knew that he might have a cause of action would be unreasonable.

Plaintiff in this case knew by at least December, 1971, that there might be a cause of action against certain physicians. Plaintiff's action against defendant was instituted more than two years from that date. We are unwilling to hold that *Dyke v Richard, supra,* applies here. The issues of professional knowledge and reasonableness are not present. Discovery of the identity of an alleged tortfeasor is no more difficult when the wrong alleged is malpractice.

Plaintiff also claims that the accelerated judgment order was improper because of MCLA 600.5855; MSA 27A.5855. When a claim or the identity of a person liable for a claim has been fraudulently concealed, that statute grants a period of two years from the time of discovery to bring the action.

The oft-repeated definition of fraudulent concealment is as follows:

> "Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of the information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *DeHaan v Winter,* 258 Mich 293; 241 NW 923 (1932), *Draws v Levin,* 332 Mich 447; 52 NW2d 180 (1952), *UAW v Wood,* 337 Mich 8; 59 NW2d 60 (1953), *DiGiovanni v Yacenick,* 9 Mich App 590; 157 NW2d 785 (1968).

The only act of concealment alleged is the placement of defendant's name, after the stamped and written name "Blakeney", on the emergency room report. It is impossible to consider this concealment, much less fraudulent concealment. It serves to give notice of defendant's involvement in the

alleged malpractice, not "to prevent inquiry or escape investigation". Even the higher standard applied in determining fraudulent concealment in the doctor-patient relationship, see *Kroll v VandenBerg,* 336 Mich 306; 57 NW2d 897 (1953), if it is applicable here, where the question is identity and not improper treatment, has been met.

There is no dispute between the parties as to the facts that underlie the claim of fraudulent concealment. Upon these undisputed facts, we hold, as a matter of law, that there was no fraudulent concealment. See *Eschenbacher v Hier,* 363 Mich 676; 110 NW2d 731 (1961).

Affirmed. Costs to defendant.