WHITNEY v GALLAGHER

Opinion of the Court

1. LIMITATION OF ACTIONS—MALPRACTICE—STATUTES.

An action based on malpractice by a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later (MCLA 600.5805[3]).

2. LIMITATION OF ACTIONS—MALPRACTICE—DISCOVERY OF MALPRACTICE.

The statute of limitations for a malpractice action against a particular doctor did not start to run until the malpractice was discovered by the plaintiff through a deposition of a defendant which revealed that the malpractice which caused the plaintiff's injury was the improper storage of a catheter by the particular doctor.

DISSENT BY M. J. KELLY, J.

3. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT.

*Fraudulent concealment is more than mere silence; it means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of the information disclosing a right of action; the acts must be of an affirmative character and fraudulent.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Attorneys at Law §§ 184–187.

When statute of limitations begins to run upon action against attorney for malpractice. 118 ALR 215.

[1, 2, 5, 6] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 181–185.

Statute of limitations applicable to malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 320.

[3, 4] 51 Am Jur 2d, Limitation of Actions § 146 *et seq.*

4. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT—CONCEAL-
MENT BY ANOTHER.

*Concealment by one other than the one sought to be charged
with malpractice is not within the prohibition of the statute of
limitations; even if a defendant in a malpractice suit wrong-
fully concealed information concerning the cause of an injury,
his action will not serve to toll the statute of limitations
against another party.*

5. LIMITATION OF ACTIONS—MALPRACTICE—ACCRUAL.

*A cause of action for malpractice accrues only when the plaintiff
is put to inquiry relative to the treatment accorded him.*

6. LIMITATION OF ACTIONS—MALPRACTICE—DISCOVERY—TIME OF IN-
JURY.

*A cause of action for medical malpractice, arising out of the
breaking of a catheter during performance of an arteriogram,
accrued when the injury occurred and was instantly discovered
where the plaintiff knew that the catheter broke during the
operation and the cause of the breakage could have been
brought to light by the use of proper investigative procedures
before suit or discovery procedures after suit.*

Appeal from Wayne, Thomas Roumell, J. Sub-
mitted June 6, 1975, at Detroit. (Docket No.
21617.) Decided August 28, 1975.

Complaint by John H. Whitney against James P.
Gallagher, M.D., Wyandotte General Hospital, Cor-
dis Corporation, Harris-Birkhill & Associates, Inc.,
and Richard F. Cooper, M.D., for medical malprac-
tice. Accelerated judgment for defendants Harris-
Birkhill and Dr. Cooper. Plaintiff appeals. Re-
versed and remanded for further proceedings.

*Shea, Shea & Heath,* for plaintiff.

*Kitch, Suhrheinrich & Getto, P. C.* (by *Norman
D. Tucker),* for defendants Harris-Birkhill & Asso-
ciates, Inc., and Dr. Cooper.

Before: DANHOF, P. J., and R. B. BURNS and M. J. KELLY, JJ.

R. B. BURNS, J. Plaintiff appeals from an order of the Wayne County Circuit Court granting an accelerated judgment based upon the running of the statute of limitations for malpractice. We reverse.

In April, 1969, plaintiff was admitted into defendant Wyandotte General Hospital to test for a possible kidney disorder. On April 25, 1969, defendant Dr. Gallagher attempted an arteriogram, a procedure which enables the investigation of the kidneys without surgery by the insertion of a catheter into the arteries. During the course of the arteriogram, the catheter broke necessitating an immediate operation to retrieve the broken fragment. Although the operation was successful, plaintiff claims that he continues to suffer many physical difficulties because of the incident.

On April 25, 1971, plaintiff filed suit against defendants Gallagher and Wyandotte General Hospital, alleging negligent performance of the arteriogram. In April, 1972, plaintiff amended his complaint to include the Cordis Corporation, manufacturers of the catheter, on the ground of liability for a defective product.

The suit proceeded through preliminary steps until January 15, 1974, when Dr. Gallagher revealed upon deposition that the probable cause of the catheter's breakage was improper storage prior to the operation. The catheter had been stored under the control of the hospital's radiology department, operated exclusively by Harris-Birkhill & Associates, concessioners, by their employee, radiologist Dr. Richard Cooper. Dr. Gallagher stated that the abnormal brittleness of the subject

catheter prompted his post-operative inquiry of Dr. Cooper, who informed him that the implement had been stored in a sterilizing solution. This was contrary to the manufacturer's express recommendation that catheters remain in their sealed containers until they are used once only and then thrown away. This information came as a complete surprise to plaintiff.

Plaintiff moved to join Dr. Cooper and Harris-Birkhill & Associates as additional defendants, and filed an amended complaint including them on May 20, 1974. The circuit judge granted the motion of these latter defendants for accelerated judgment based upon the running of the statute of limitations, and plaintiff appeals.

MCLA 600.5805(3); MSA 27A.5805(3), states that "The period of limitations is 2 years for actions charging malpractice."

In *Dyke v Richard,* 390 Mich 739, 747; 213 NW2d 185, 188 (1973), the Supreme Court said:

> "Accordingly we hold that an action based on malpractice by a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later."

This language is straightforward and unequivocal. Our responsibility is to rely thereupon in determining the date on which the statute commenced to run. The circuit judge accepted defendants' argument that the statute ran from the date on which the plaintiff knew that the catheter had been broken in his body. We disagree.

The circuit judge has implicitly accepted defend-

ants' argument that the *Dyke* Court actually intended to employ the word "injury" for the word "malpractice" in prescribing the discovery phase of the test. Defendants contend that the cases applying the discovery rule key the triggering of the statute of limitations to discovery of the injury, and cite *Winfrey v Farhat,* 382 Mich 380; 170 NW2d 34 (1969), and *Cates v Frederick W Bald Estate,* 54 Mich App 717; 221 NW2d 474 (1974), in support of this contention. Even cursory review of the facts of these cases reveals this assertion wrong. More significantly, we are convinced that the Supreme Court, had it wished to do so, could have as easily used the word "injury" as the word "malpractice". In fact, the Court specifically noticed that the last treatment rule was itself "a liberalizing of the general rule that the cause of action accrues at the time of injury". *Dyke v Richard, supra,* 747. They then chose to "liberalize" further by reconciling the last treatment rule with the less restrictive discovery rule. In our opinion this is a good rule.

Dr. Gallagher made inquiries right after the accident and discovered that the catheter had been improperly stored by Harris-Birkhill & Associates and Dr. Cooper.

Did Dr. Gallagher go to see the plaintiff, who was his patient and with whom he has a confidential relationship, and say: "John, I have discovered what went wrong with the test. The radiologist stored the catheter improperly and made it brittle."? No, he chose to remain silent until questioned in a deposition and asked point blank: "What would you determine to make this catheter become friable?" Then he answered: "Improper storage."

In this case the malpractice is not the injury. It

is the improper storage of the catheter. The plaintiff did not discover the malpractice until the deposition of Dr. Gallagher. Under *Dyke v Richard, supra,* the statute of limitations did not start to run until the malpractice was discovered.

The order granting accelerated judgment is vacated, and the cause is remanded to the circuit court for further proceedings.

Costs to plaintiff.

DANHOF, P. J., concurred.

M. J. KELLY, J. *(dissenting)*. It seems to me the issue of which act constitutes the malpractice—the injury or the improper storage of the catheter—is not the controlling issue here. Assuming *arguendo* that the improper storage of the catheter constitutes the malpractice, it is clear that plaintiff could have discovered it long before the taking of Dr. Gallagher's deposition of January 15, 1974. Nearly five years had elapsed between the performing of the arteriogram and Dr. Gallagher's deposition. From the time of filing suit in April of 1971 plaintiff had available the tools of discovery with which to learn the facts surrounding any misuse or abuse of the therapeutic device.

There was no allegation made by plaintiff on appeal that Dr. Gallagher had fraudulently concealed this information. Whether Dr. Gallagher's actions amounted to fraudulent concealment is a question beyond the scope of this decision. I consider it doubtful that silence could be construed as fraudulent concealment under this definition:

"[M]ere silence on the part of defendant is not fraudulent concealment of the cause of action". *McNaughton v Rockford State Bank,* 261 Mich 265, 268; 246 NW 84, 86 (1933).

"Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of the information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *DeHaan v Winter,* 258 Mich 293; 241 NW 923 (1932).

*Draws v Levin,* 332 Mich 447; 52 NW2d 180 (1952), *UAW v Wood,* 337 Mich 8; 59 NW2d 60 (1953), *DiGiovanni v Yacenick,* 9 Mich App 590; 157 NW2d 785 (1968).

Furthermore, the Supreme Court held in *UAW v Wood, supra,* 337 Mich at 14, that "concealment by one other than the one sought to be charged is not within the prohibition of the statute." In other words, even if Dr. Gallagher wrongfully concealed the information, his action will not serve to toll the statute of limitations against Harris-Birkhill & Associates and Dr. Cooper.

In *Dyke v Richard,* 390 Mich 739, 747; 213 NW2d 185 (1973), the Supreme Court set forth the applicable statute of limitations in malpractice cases:

"Accordingly we hold that an action based on malpractice by a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later."

The rationale for this rule is that " * * * a cause of action accrues only when the plaintiff is put to inquiry relative to the treatment accorded him". 390 Mich at 745; 213 NW2d 185.

In *Dyke v Richard, supra,* plaintiff had been

involved in an automobile accident and was treated by defendant doctor at a hospital. Plaintiff alleged that defendant was negligent in failing to x-ray her pelvic area, and claimed that this negligence resulted in a failure to find that she had suffered a fractured acetabulum as a result of the accident. It was not until several months later that she learned of the existence of the injury.

In the case at bar, plaintiff was clearly put on inquiry as soon as the arteriogram was performed. There is no allegation that anyone attempted to conceal from him that the broken catheter was the cause of his injury. Certainly a doctor has a duty to inform his patient that he has injured him and the nature of the injury. But I do not believe we should go so far as to require an attending physician to first inform himself of the cause of failure of a therapeutic device and then convey that information to his patient.

This case is similar to *Walerych v Isaac,* 63 Mich App 478; 234 NW2d 573 (1975). There plaintiff's decedent sought medical assistance at Pontiac General Hospital's emergency room in January, 1970, complaining of headaches, dizziness and other problems. Several physicians saw him, the last being defendant, who diagnosed his condition as flu and sent him home. Later that month he died from an acute bacterial infection. In May, 1974, plaintiff brought an action against defendant, alleging malpractice in the diagnosis and treatment of decedent's condition. Defendant's motion for accelerated judgment, based on the malpractice statute of limitations, MCLA 600.5805(3); MSA 27A.5805(3), was granted. Plaintiff contended that two years had not elapsed since the discovery of defendant's identity. Another panel of this Court rejected that contention, saying, "Discovery

of the identity of an alleged tortfeasor is no more difficult when the wrong alleged is malpractice."

Here, plaintiff knew that the catheter broke during the operation. The question became—why? The answer to that question could have been brought to light by the use of proper investigative procedures before suit or discovery procedures after suit. I think that the cause of action accrued when the injury occurred and was instantly discovered.

I would affirm.