HEISLER v ROGERS

Docket No. 54480. Submitted December 10, 1981, at Detroit.—Decided January 26, 1982.

J. Speed Rogers, M.D., while performing a laminectomy on Carl Heisler, left a piece of needle in Heisler's back. Subsequently, Heisler and his wife filed suit against Rogers in Wayne Circuit Court alleging malpractice. The court, James A. Hathaway, J., granted defendant accelerated judgment based on the statute of limitations. The plaintiffs appeal. *Held:*

The trial court properly granted the defendant's motion for accelerated judgment. A person must file a malpractice suit within two years of the last treatment or the date he discovers or reasonably should have discovered the alleged malpractice, whichever is later. Under the time of discovery rule the plaintiffs' claim is barred. To allow the plaintiffs to treat the defendant's act of leaving the piece of needle in Mr. Heisler's back as a continuing wrong for purposes of the proper statute of limitations would be contrary to the purpose of statutes of limitation.

Affirmed.

1. LIMITATION OF ACTIONS — MALPRACTICE — PHYSICIANS.

An action based on malpractice by a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later (MCL 600.5805[4]; MSA 27A.5805[4]).

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 318-321.

[2, 4] 51 Am Jur 2d, Limitation of Actions § 470.

[3, 5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 320.

[5] When statute of limitations begins to run against malpractice action based on leaving foreign substance in patient's body. 70 ALR3d 7.

2. LIMITATION OF ACTIONS — ACCELERATED JUDGMENTS — COURT
   RULES.

   A motion for accelerated judgment is the appropriate vehicle by
   which to raise the affirmative defense of the statute of limita-
   tions (GCR 1963, 116.1[5]).

3. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — LAST TREAT-
   MENT RULE.

   The essence of the last treatment rule for statute of limitations
   purposes in medical malpractice actions is that the cessation of
   the ongoing patient-physician relationship marks the point
   where the statute of limitations begins to run.

4. LIMITATION OF ACTIONS — ACCELERATED JUDGMENTS.

   Generally, an accelerated judgment based on the statute of
   limitations in malpractice actions is improper where material
   factual disputes exist regarding discovery of the asserted mal-
   practice.

5. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — CONTINUING
   ASSAULT AND BATTERY.

   A doctor's leaving a piece of needle in a plaintiff's back is not a
   continuing assault and battery for purposes of the application
   of the proper statute of limitations.

*Bishop & Shelton, P.C.* (by *Thomas H. Blaske),*
for plaintiffs.

*Kitch, Suhrheinrich, Smith, Saurbier & Drut-
chas, P.C.,* for defendant.

Before: D. C. RILEY, P.J., and R. M. MAHER and
CYNAR, JJ.

PER CURIAM. On March 22, 1972, defendant
performed a laminectomy on Carl Heisler and left
a piece of needle which had broken off in plaintiff
Carl Heisler's back. On August 16, 1979, plaintiffs
commenced this action in Wayne County Circuit
Court. Defendant filed a motion for accelerated
judgment based on the statute of limitations. The

trial court granted the defendant's motion. Plaintiffs appeal from that order as of right.

The statute of limitations for malpractice is two years. MCL 600.5805(4); MSA 27A.5805(4). Accrual of the claim is governed by MCL 600.5838; MSA 27A.5838, which states:

"A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession * * * accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose * * *."

A person must bring suit within two years of the last treatment or the date he discovers or reasonably should have discovered the alleged malpractice, whichever is later. *Dyke v Richard,* 390 Mich 739, 747; 213 NW2d 185 (1973).

A motion for accelerated judgment is the proper vehicle by which to raise the affirmative defense of the statute of limitations. GCR 1963, 116.1(5). However, a summary dismissal by accelerated judgment is improper if disputed fact issues exist on either the date of last treatment or date of discovery. *Kelleher v Mills,* 70 Mich App 360; 245 NW2d 749 (1976).

First, plaintiffs contend that plaintiff Carl Heisler's August, 1978, visit to defendant is the date of last treatment for purposes of the statute of limitations. We cannot agree. The philosophy behind the last treatment rule was explained in *Johnson v Caldwell,* 371 Mich 368, 379; 123 NW2d 785 (1963):

"The grave inequities which could follow the application of the last treatment rule are well illustrated by

the case at bar. Plaintiff testified, as pointed out earlier, 'I accepted his [defendant's] word [that] nothing could be done for it.' As phrased in *Ayers v Morgan* [397 Pa 282; 154 A2d 788 (1959)], *supra*, p 285, it would be 'illogical and unintelligent' to require a patient to determine on the date he last consults a physician that malpractice has taken place, when he in fact relies upon the advice that constitutes the malpractice. So to hold would punish the patient who relies upon his doctor's advice and places a premium on skepticism and distrust."

The essence of the last treatment rule is that the cessation of the ongoing patient-physician relationship marks the point where the statute of limitations begins to run.

Mr. Heisler's laminectomy was performed in March of 1972 and his last follow-up visit was in September of 1972. He did not visit or seek any treatment from defendant until six years later on the August, 1978 visit. In 1974, on his own initiative, plaintiff went to the Mayo Clinic. Mr. Heisler was hospitalized at the Mayo Clinic for ten days in 1974. After the 1974 visit, Mr. Heisler returned to the Mayo Clinic two more times. He apparently went to a neurosurgeon, Dr. Austin, in August of 1978. Dr. Austin examined Mr. Heisler and recommended further tests. However, Mr. Heisler did not have the tests because he and his wife were getting ready to leave for their winter residence in Arizona. Dr. Austin apparently then suggested that Mr. Heisler see the doctor who performed the operation. Mr. Heisler had also been seeing a neurosurgeon, Dr. Thompson, in Arizona, one or two times a year for a number of years since he began to spend winters in Arizona. During the six-year period, Mr. Heisler consulted two neurosurgeons and the Mayo Clinic about his back on numerous occasions; but, not the defendant.

The facts in the instant case are clearly distinguishable from those in *DeGrazia v Johnson,* 105 Mich App 356; 306 NW2d 512 (1981). In *DeGrazia,* the issue was whether the trial court erred in finding that defendant was "treating or otherwise serving plaintiff" by means of a telephone conversation. This Court held that on the unique facts of the case, the trial judge did not err. This Court stated:

> "[T]he statute did not begin to run until after the June, 1976, telephone conversation between defendant and James DeGrazia since it was not until that time that defendant discontinued 'treating or otherwise serving the plaintiff'. In reaching this conclusion, we note that James DeGrazia's June, 1976, telephone conversation with defendant occurred approximately one month after his last examination by defendant, referred to his knee which had been operated on by the defendant, and does not appear to have been a device, when it occurred, for prolonging the statute of limitations." *Id.,* 360-361.

This Court concludes that the ongoing doctor-patient relationship and its accompanying air of trustfulness in one's own doctor ended in September of 1972. It is that date which should be used in calculating the statute of limitations by date of last treatment.

This conclusion comports with the underlying policies of the statute of limitations. To allow a single visit after six years to extend or revive the statute of limitations would invite abuse and stale claims. There was no action of defendant in that six years which led Mr. Heisler to believe the situation was different than he now believes.

The second issue raised by plaintiffs is that their claim is not barred by the statute of limitations under the date of discovery rule. The controlling

question becomes when, by the exercise of reasonable diligence, plaintiff Carl Heisler should have discovered the existence of a claim.

The general rule is that an accelerated judgment grounded on the statute of limitations is improper when material factual disputes exist regarding discovery of the asserted malpractice. *Winfrey v Farhat*, 382 Mich 380; 170 NW2d 34 (1969). Numerous cases have relied on the analysis set forth in *Leary v Rupp*, 89 Mich App 145, 148; 280 NW2d 466 (1979):

> "A person usually visits a doctor because of a physical or mental problem. Therefore, it is easy to assume that subsequent developments are due to the problem which initiated the contact rather than negligence on the part of the doctor. In addition, the doctor himself may allay any suspicions the patient might have. See *Kelleher [v Mills, 70 Mich App 360; 245 NW2d 749 (1976)], supra, Cates v Frederick W Bald Estate,* 54 Mich App 717; 221 NW2d 474 (1974). For these reasons knowledge of the act and resulting injury alone may be insufficient to commence the running of the statute of limitations. On the other hand, it is not necessary that the plaintiff recognize that she has suffered an 'invasion of a legal right'. *Patterson v Estate of Flick,* 69 Mich App 101; 244 NW2d 371 (1976). We conclude that in order to discover 'asserted malpractice' a person must know of the act or omission itself, *i.e.,* prescribing polycillin, and have good reason to believe the act itself was improper or was done in an improper manner.
>
> "Under certain circumstances mere knowledge of the act will be sufficient because it alone gives good reason to believe it was improper. For example, in *Patterson, supra,* the defendant severed a femoral nerve during an appendectomy resulting in paralysis."

See also *Jackson v Vincent,* 97 Mich App 568; 296 NW2d 104 (1980), *Leyson v Krause,* 92 Mich App 759; 285 NW2d 451 (1979).

In the instant case, defendant informed plaintiff Mr. Heisler that a part of the needle had been left in him during the surgery. Defendant assured Mr. Heisler that this was not detrimental to him. Therefore, at this point Mr. Heisler would not necessarily have discovered the malpractice. Mr. Heisler does not state when he actually did discover the existence of a claim. As defendant points out, the complaint relied on the last treatment theory.

This Court considers it important that all of the various doctors that Mr. Heisler visited told him that the needle could be the cause of his pain.

As early as 1974, Mr. Heisler knew that despite what the defendant told him, other well-respected physicians believed that the needle could be causing his problem. Even if mere knowledge of the needle was insufficient to trigger discovery of the malpractice, surely when Mr. Heisler received other opinions which suggested the needle as the possible source of the difficulties he then discovered the malpractice. We therefore conclude that under the time of discovery rule plaintiffs' claim is barred.

The third issue raised by plaintiffs is that the statute of limitations has not run on their action since a continuing assault and battery exists because the needle remains in plaintiff's back. The concept of a "continuing wrong" has never been applied to an assault and battery or personal injury case. The Michigan cases cited by the plaintiffs deal with nuisance or trespass to property actions as did the other cases which discussed a continuing wrong.

To allow the plaintiffs to extend the statute of limitations by claiming that the defendant's act of leaving the piece of needle in plaintiff Carl Heis-

ler's back is a continuing wrong, because Mr. Heisler has never had it removed, would be contrary to the purpose of statutes of limitation.

In summary, the trial court properly granted the defendant's motion for accelerated judgment. No material issues of fact existed which would require that the decision be left to the jury.

Affirmed.