Jane Marie KNOX, Plaintiff-Appellee,

v.

ELI LILLY AND COMPANY, Defendant-Appellant.

No. 77–1061.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1978.

Decided Feb. 6, 1979.

Rehearing Denied March. 6, 1979.

**318**

Robert S. Krause, Henry W. Saad, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendant-appellant.

Richard M. Goodman, Richard A. Soble, Goodman, Eden, Millender, Goodman & Bedrosian, Detroit, Mich., for plaintiff-appellee.

---

1. Because this is an appeal from an order denying a motion for summary judgment based solely on the statute of limitations, the plaintiff's presentation of the facts is accepted as true for the purposes of this appeal. Rule 56, Federal Rules of Civil Procedure.

2. The certification procedure which we initiated is provided for in Rule 797.2, Michigan Court Rules. The section was adopted in 1976, and provides:

> (a) When a federal court or state appellate court considers a question that Michigan law may resolve and that is not controlled by

Before WEICK and CELEBREZZE, Circuit Judges, and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

Jane Marie Knox was born on February 24, 1955. When she was a year and a half old, she was being immunized by her family doctor against poliomyelitis.[1] Within twenty-four hours after receiving the second shot of the series, she became seriously ill, developing a high fever and a stiff neck. She soon was unable to walk, and upon being admitted to the hospital, was diagnosed as suffering acute poliomyelitis. Permanent crippling spinal injuries resulted from the disease.

On January 14, 1975, one year and eleven months after her eighteenth birthday, the plaintiff filed this diversity action against Eli Lilly, the manufacturers of the vaccine used to innoculate her, alleging that the vaccine was unsafe, unfit and contaminated, and that the defendant was negligent in failing to properly label and warn of the dangers of its product.

The sole issue on this interlocutory appeal, certified to us by the district court pursuant to 28 U.S.C. § 1292(b), is whether plaintiff's action is barred by the Michigan statute of limitations. We agree with the district court that it is not, and remand the case for trial on the merits.

**I**

After consideration of the briefs and oral arguments of the parties, we decided to certify this issue to the Michigan Supreme Court for resolution.[2] As we noted in our certification order:

> Michigan Supreme Court precedent, the court may on its own motion or that of an interested party certify the question to the Michigan Supreme Court.
>
> (b) A certificate may be prepared by stipulation or at the certifying court's direction and must contain:
>
> (1) the case title;
>
> (2) a factual statement; and
>
> (3) the question to be answered.
> The presiding judge must sign it and the clerk must certify it under seal.

The issue is purely one of interpretation of Michigan statutes, and we find that there is substantial ground for difference of opinion. Furthermore, so far as we are able to determine, there is no controlling Michigan precedent. Given the Michigan certification procedure, we see no reason to intervene in the resolution of this issue of state law and policy unless required to do so.

It appears, unfortunately, that we are required to do so. The Michigan Supreme Court simply returned the case to us, stating merely that it "respectfully declines to respond to the question."

This is not the first time our questions have been rebuffed by the Michigan Supreme Court, and we must frankly conclude that the promise of the certification procedure set out in Rule 797.2 appears to be illusory. The certification procedure, now adopted by several states, has been praised as an example of "rare foresight" by Mr. Justice Frankfurter. *Clay v. Sun Insurance Office*, 363 U.S. 207, 212, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960). The procedure embodies the best of a "cooperative judicial federalism,"[3] in Professor Kurland's phrase, permitting efficient use of judicial resources, providing resolutions of state law with precedential value, and avoiding the unnecessary friction between state and federal courts which is otherwise an undesirable side-effect of our diversity and pendent jurisdiction. If our requests for assistance are to be denied, however, the certification procedure is worse than useless, as it only further delays the lethargic movement of civil cases through the courts.

The declination by the Supreme Court of Michigan to hear and decide the legal questions of Michigan law in this case, as authorized by its own rule, furnishes another excellent argument in favor of abolishing the diversity jurisdiction of federal courts. When diversity jurisdiction is abolished the federal courts will no longer be required to assign precious time to the fruitless task of rendering decisions involving only questions of state law which will lack precedential value. Such cases will then be tried and decided in the jurisdictions where they belong, namely in the state courts.

Since we must decide this issue of state law, we turn to an analysis of the problem.

## II

Both parties agree that the plaintiff's cause of action accrued at the time she fell ill from the innoculation. The dispute is over the applicable statute of limitations. In 1956, when plaintiff was injured, the statute of limitations for personal injury claims was three years.[4] However, the period of limitations was tolled until the legal disability of infancy was removed at the age of 21, when the three year period began to run again.[5] Thus, at the time Jane Ma-

---

(c) With the certificate, the parties shall submit:
(1) briefs conforming with GCR 1963, 854 and 857;
(2) a joint appendix conforming with GCR 1963, 855, 856 and 857; and
(3) a request for oral argument, if oral argument is desired. Typewritten briefs and an appendix in xerographic form may be filed, to be followed by printed briefs and a printed appendix if the Michigan Supreme Court decides to answer the question certified.
(d) If the Michigan Supreme Court responds to the question certified, the clerk shall send a copy to the certifying court under seal.
(e) The Michigan Supreme Court shall divide costs equally between or among the parties, subject to redistribution by the certifying court.

**3.** Kurland, "Toward a Cooperative Judicial Federalism," 24 F.R.D. 481 (1960).

**4.** M.C.L.A. § 609.13(2), in effect in 1956, provided:

> Actions to recover damages for injuries to persons or property and actions for trespass upon lands shall be brought within 3 years from the time said actions accrue, and not afterwards.

**5.** M.C.L.A. § 609.15, also in effect in 1956, provided:

> If any person entitled to bring any of the actions mentioned in this chapter shall at any time when the cause of action accrues, be within the age of 21 years, insane, or imprisoned in the state prison, such person may bring the action within the times in this chapter respectfully limited, after such disability shall be removed.

rie Knox fell ill, she had until her twenty-fourth birthday, or until February 24, 1979, to file suit. Since her suit was filed in 1975, the action would have been clearly within the limitations period, if it weren't for the fact that the tolling statute has been rewritten twice since 1956. Which, if any, of those changes apply retroactively to affect plaintiff's cause of action is the focus of the dispute on this appeal.

In 1961, Michigan practice and procedure law was extensively amended and recodified as the Revised Judicature Act (RJA), which became effective January 1, 1963. Recognizing that changes in the law permitting guardians to bring suit on behalf of minors and incompetents had solved many of the problems formerly faced by persons under legal disability in attempting to enforce their rights, the legislature changed the tolling provision to provide that once the disability was removed, a person would have a grace period of only one year to bring suit, regardless of the cause of action.[6] However, the RJA included two savings clauses which make it clear that this change had no effect on Jane Marie Knox's cause of action. Section 600.5869 provided:

> All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry.

Furthermore, section 600.9905 provided:

> Except as specifically stated or reasonably inferred from the provisions of this act, this act shall not impair or affect any act done, offense committed or right accruing, accrued, or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time this act takes effect, but the same may be enjoyed,

asserted, enforced, prosecuted, or inflicted as if this act had not been passed. Both sections are still in effect.

The Michigan Supreme Court has had occasion to consider the effect of these savings clauses with respect to another statute of limitations section in the RJA relating to malpractice claims. *Winfrey v. Farhat,* 382 Mich. 380, 170 N.W.2d 34 (1969) was a malpractice case arising out of an operation performed in 1949. The patient did not improve, and suffered continued distress until 1965, when another operation revealed that the first had been improperly performed. The suit was filed six months later.

■ At the time of the first operation, Michigan law provided that the statute of limitations began to run at the time of the discovery of the wrongful act. The RJA changed that rule, providing that a malpractice claim accrues at the time the physician discontinues treating the patient for the matters out of which the claim arises. The Michigan Supreme Court held that the RJA had no effect on the plaintiff's cause of action, concluding that "since the plaintiff's claims arose out of an act done prior to January 1, 1963 (the effective date of the RJA), in view of section 9905 [the savings clause], section 5838 [the new standard for malpractice claims] is not applicable. The discovery rule is." 382 Mich. at 389-390, 170 N.W.2d at 39. Similarly, we conclude that since the plaintiff's claims arose out of an act allegedly done prior to January 1, 1963, the new tolling provision with the one-year grace period is not applicable. Jane Marie Knox still had three years after reaching the age of majority within which to file suit.

■ The defendant contends, however, that a second rewriting of the statute in connection with the Age of Majority Act of 1971 did change the statute of limitations

---

6. M.C.L.A. § 600.5851, as effective in 1963, provided:

(1) **Commencement of action; operation of section.** If the person first entitled to make an entry or bring any action is under 21 years of age, insane, or imprisoned at the time his claim accrues, he or those claiming under

him shall have 1 year after his disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852.

applicable to this lawsuit. When the age of majority was lowered from 21 to 18, section 600.5851(1) was amended by merely changing "21" to "18" in the statute. The section now reads:

> (1) *Commencement of action; operation of section.* If the person first entitled . . . to bring an action is under 18 years of age . . . at the time his claim accrues, he or those claiming under him shall have 1 year after his disability is removed through death or otherwise, to . . . bring the action although the period of limitations has run.

We have already concluded that the one-year grace period contained in section 600.5851(1) was not intended to apply to causes of action which accrued before 1963. We see nothing in the change in the age of majority contained within the statute to suggest that there was any change intended as to the *grace period* once the legal disability of majority was lifted.

While section 600.5851(1) does not apply to the plaintiff, another subsection enacted at the time of the passage of the Age of Majority Act, section 600.5851(6), does apply. That section, intended to deal with the problem of the group of potential plaintiffs between the ages of 18 and 21 at the time the statute was passed, provides:

> (6) With respect to a claim accruing before [January 1, 1972], disability of infancy shall be considered removed as of [January 1, 1972] as to persons who were at least 18 years of age but less than 21 years of age on January 1, 1972 and shall be considered removed as of the eighteenth birthday of a person who was under 18 years of age on January 1, 1972.

The defendant contends that this subsection renders all of section 600.5851 retroactive, both lowering the age of majority and limiting the grace period to one year for all infants with a claim which accrued before January 1, 1972. The plaintiff clearly falls within the scope of subsection (6). Her claim accrued before January 1, 1972, and since she was less than 18 on that date (she was 16) her legal disability was removed as of her eighteenth birthday. But the provision makes no mention of the length of the grace period once the removal of the disability was accomplished, and we will not infer an intent to render section 600.5851(1) retroactive from another subsection which makes no mention of the grace period, especially in light of the two savings provisions which are still in effect.

Thus, before the passage of the Age of Majority Act, the statute of limitations applicable to Jane Marie Knox's cause of action was three years after reaching the age of majority. For an infant injured in 1964, it was one year after reaching the age of majority. The new Age of Majority Act did not change these results; it simply redefined the age of majority, substituting 18 for 21, and made that change applicable to all infants whether their claim had already accrued or not. As noted in *Foster v. Woods,* 71 Mich.App. 147, 246 N.W.2d 387 (1976), "the Age of Majority Act of 1971 . . . did not shorten a limitation period, but *only changed the age at which disability was removed.*" *Id.,* at 149, 246 N.W.2d at 388 (emphasis added). Accord, *Tyner v. Fishman,* 56 Mich.App. 240, 223 N.W.2d 651 (1974).[7]

---

**7.** There are constitutional issues raised when a limitations period is retroactively shortened. Both *Foster* and *Tyner* involved plaintiffs between the ages of 18 and 21, who sustained injuries after 1963. Thus the effect of section 600.5851(6) was to immediately start the running of the one-year grace period, and the plaintiffs filed their complaints too late. *Foster* and *Tyner* upheld section 600.5851(6), ruling that it was not a violation of due process as applied to the plaintiffs.

Because both cases involved injuries sustained after 1963, the question of the length of the grace period was not an issue. However,

the defendant has seized upon language in the two cases to argue that all infants had only one year after removal of disability within which to file suit. In *Foster,* the court pointed out that as to the plaintiff in that case, "once disability was removed, a 1-year period remained during which an action could properly be brought." 71 Mich.App. at 149, 246 N.W.2d at 388. In *Tyner,* the court commented, "As a result of this amendment, all infants had one year from the removal of disability within which to bring an action on a claim accruing during infancy." 56 Mich.App. at 242–243, 223 N.W.2d at 652. Given the context of these comments and the

Jane Marie Knox had her eighteenth birthday on February 24, 1973. At that time, the Age of Majority amendments were effective to remove her disability of infancy. Since the statute of limitations in effect at the time of her injury provided that she had three years "after such disability shall be removed," M.C.L.A. § 609.15, and the statutory savings clauses provide that a cause is governed by the limitations period in effect at the time the cause of action accrued, she then had three years within which to file suit, until February 24, 1976. Since her suit was actually filed January 14, 1975, her suit was timely.

The decision of the district court is affirmed.

facts of the cases, we think it clear that the Michigan courts weren't considering a pre-1963 cause of action, but were merely noting that all infants had *at least* a year within which to file suit, satisfying the requirements of due process. In any event, any further expression must be viewed as dicta.