# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF EAST GRAND RAPIDS,

      Plaintiff-Appellee,

v

TREVOR ALLEN VANDERHART,

      Defendant-Appellant.

UNPUBLISHED
April 11, 2017

No. 329259
Kent Circuit Court
LC No. 14-010058-AR

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

This appeal presents the Court with a straight-forward question: Can an officer stop a vehicle because of a dim taillight? The answer is also straight-forward: Yes, at least under the circumstances of this case. On this, a majority agrees, and we affirm. As to the road taken to that destination, the panel diverges on who has the better claim.

## I. BACKGROUND

During the early morning hours on January 5, 2014, Officer Daniel Lobbezoo was working road patrol in East Grand Rapids. He passed defendant's vehicle traveling in the opposite direction. In his rearview mirror, Officer Lobbezoo believed that he saw that one of defendant's taillights was completely out. Officer Lobbezoo turned around to follow defendant. After catching up to defendant, Officer Lobbezoo saw that his initial perception was incorrect but continued following defendant because one of defendant's taillights was significantly dimmer than the other. Officer Lobbezoo pulled defendant over,[1] and when he approached the vehicle, he smelled alcohol and saw that defendant's eyes were glassy and bloodshot. Officer Lobbezoo had defendant perform several field sobriety tests and determined that defendant was intoxicated. He then arrested defendant for OWI. Defendant was transported to the Kent County Jail and took two DataMaster DMT tests. The first test showed that defendant's alcohol level

---

[1] At trial, Officer Lobbezoo indicated that he did not pull defendant over based upon his belief that defendant violated a specific section of the vehicle code but rather based upon his belief that the vehicle code generally prohibited defendant's defective taillight.

-1-

was 0.14 grams per 210 liters of breath, and his second test showed that his alcohol level was 0.13 grams per 210 liters of breath.

Before trial, defendant filed a motion to suppress all evidence obtained as a result of Officer Lobbezoo's traffic stop, arguing that Officer Lobbezoo lacked reasonable suspicion to stop defendant. At the hearing on defendant's motion, Officer Lobbezoo testified that he was uncertain whether both of defendant's taillights were visible from 500 feet. The district court admitted into evidence the dash-cam video from Officer Lobbezoo's police cruiser, and Officer Lobbezoo testified that he was unable to speculate whether defendant's taillights were visible from 500 feet. Visiting District Judge David L. Jordan denied defendant's motion, finding that Officer Lobbezoo's testimony was credible, that the dash-cam video was inconclusive as to the distance from which defendant's taillights were visible, and that defendant's malfunctioning passenger-side taillight gave Officer Lobbezoo reasonable suspicion to stop defendant. Judge Jordon explained that defendant's defective taillight caused his properly functioning taillight to appear brighter, thereby creating a safety concern because other drivers could reasonably perceive that defendant was "breaking in front of [them] all the time." (M Tr, 62).

At the close of the prosecution's case at trial, defendant renewed his motion to suppress and moved for a directed verdict, again arguing that all of the evidence flowing from Officer Lobbezoo's stop of defendant should be suppressed. Defendant argued that his taillights were visible from 500 feet and, therefore, he was not in violation of the Michigan Vehicle Code when Officer Lobbezoo pulled him over. District Judge Steven R. Servaas, who presided over defendant's trial, was uncertain whether he could rule on the motion since a different judge had made the initial ruling, but he took defendant's motion under advisement. The jury later returned a guilty verdict. Judge Servaas then granted defendant's motion and set aside the jury's verdict, finding that Officer Lobbezoo did not have reasonable suspicion to stop defendant's vehicle because the dash-cam video of the stop showed that defendant's taillights were clearly visible from 500 feet.

The prosecution appealed to the circuit court, and the circuit court granted the prosecution's leave to appeal. The circuit court vacated Judge Servaas's ruling and reinstated the jury's verdict, reasoning that Officer Lobbezoo's belief that he could stop defendant to inspect the vehicle based on the dim taillight was reasonable. The circuit court relied on the U.S. Supreme Court's recent decision in *Heien v North Carolina*, 574 US ___; 135 S Ct 530, 536; 190 L Ed 2d 475 (2014), where the court held that reasonable suspicion can be predicated on a reasonable mistake of law.

By leave granted, defendant challenges the circuit court's ruling.

II. ANALYSIS

On appeal, defendant argues that the circuit court erred by reversing the district court's ruling because Officer Lobbezoo's stop violated the Fourth Amendment.

A.    Traffic Stops and the Fourth Amendment

The United States and Michigan Constitutions guarantee the right of persons to be secure against unreasonable searches and seizures.  US Const, Am IV; Const 1963, art 1, § 11.  In Michigan, the protective scope of each constitutional provision is the same.  *People v Custer*, 465 Mich 319, 326 n 2; 630 NW2d 870 (2001).  "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment."  *Heien*, 574 US at ___; 135 S Ct at 536 (internal citations and quotation marks omitted).

The benchmark for a lawful search and seizure is "reasonableness."  *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001).   "The Fourth Amendment permits brief investigative stops—such as the traffic stop in this case—when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of" breaking the law.  *Navarette v California*, 572 US ___, ___; 134 S Ct 1683, 1687; 188 L Ed 2d 680 (2014) (internal citation and quotation marks omitted). This basis for making a stop is known as reasonable suspicion. See *id*.

As explained recently by the U.S. Supreme Court, "[r]easonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law." *Heien*, 574 US at ___; 135 S Ct at 536.  A "determination of whether there was reasonable suspicion to justify a stop must be made on a case-by-case basis, evaluated under the totality of the circumstances, and based on common sense." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611, 614 (2012).

Experience has taught that not all stops are justified.  In those cases, the remedy for a Fourth Amendment violation is typically "suppression of the unlawfully obtained evidence." *People v Cartwright*, 454 Mich 550, 558; 563 NW2d 208 (1997).  This is known as the exclusionary rule.  See *Mapp v Ohio*, 367 US 643, 656; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).  "The goal of the exclusionary rule . . . is to deter police misconduct." *People v Goldston*, 470 Mich 523, 538; 682 NW2d 479 (2004).  Therefore, "the exclusionary rule should be employed on a case-by-case basis and only where exclusion would further the purpose of deterring police misconduct." *Id*. at 531.

B.    Taillights Under Michigan's Vehicle Code

It is undisputed that the passenger-side taillight on defendant's vehicle did not fully operate when Officer Lobbezoo stopped him.  Michigan's Vehicle Code has several provisions that *could* apply when a taillight is defective in some way.  First, section 686, subsection (1) states in relevant part, "A motor vehicle . . . shall be equipped with at least 1 rear lamp mounted on the rear, which, when lighted as required by this act, shall emit a red light plainly visible from a distance of 500 feet to the rear."  MCL 257.686(1).  In turn, subsection (2) provides in relevant part, "A tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be wired so as to be lighted whenever the head lamps or auxiliary driving

lamps are lighted." If a vehicle has more than one taillight, all of the taillights[2] must be lighted. *People v Williams*, 236 Mich App 610, 615; 601 NW2d 138 (1999).

Second, in addition to the section dealing specifically with taillights, the Legislature set forth a more general "unsafe condition" prohibition for all vehicles on Michigan roads: "A person shall not drive . . . a vehicle . . . that is in such an unsafe condition as to endanger a person . . . ." MCL 257.683(1). A person who drives a vehicle in violation of section 686 or the more general "unsafe condition" provision of section 683 may be guilty of a civil infraction. MCL 257.683(6). And, important for this case, a police officer who suspects "on reasonable grounds shown" a violation of either provision may stop and inspect the vehicle. MCL 257.686(2).

C.     The District Court Erred by Suppressing the Evidence

After trial, Judge Servaas, who did not preside over the earlier suppression hearing, granted defendant's renewed motion to suppress, finding that both of defendant's taillights were undoubtedly visible from 500 feet. "This Court reviews a trial court's factual findings in a suppression hearing for clear error." *People v Nguyen*, 305 Mich App 740, 750; 854 NW2d 223 (2014). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). "[W]e review de novo the trial court's ultimate ruling on the motion to suppress." *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005).

In making his ruling, Judge Servaas said that he considered the transcript from the original motion to suppress. Yet, Judge Servaas failed to explain why he found not credible the testimony of Officer Lobbezoo, who testified during the prior suppression hearing before Judge Jordan that he could not speculate whether the taillights were visible from 500 feet. See *People v Wolfe*, 440 Mich 508, 514-515, 289 NW2d 748 (finding that courts that "see and hear witnesses . . . are in a better position to decide the weight and credibility given to their testimony" than courts that are reviewing the testimony from a transcript). It appears that when Judge Servaas disregarded Officer Lobbezoo's testimony, he did so solely based upon the video of the incident as recorded on the police dash-cam. Because this video "is something that [an appellate court] can review as easily as the trial court," the Court can review Judge Servaas's findings of fact with less deference. *People v White*, 294 Mich App 622, 633; 823 NW2d 118 (2011).

Judge Servaas provided no guidance regarding how he arrived at his conclusion that defendant's taillights were undoubtedly visible from 500 feet. After reviewing the video of the stop, which is included in the record, it remains unclear how Judge Servaas determined that both of defendant's taillights were clearly visible from 500 feet. When the defendant's car first appeared in the video, only one taillight was clearly visible. As the video continued, there became a point of distance where both of defendant's taillights were clearly visible, but the video

---

[2] The terms "tail lamp" and "taillights" are used interchangeably. See, e.g., *The American Heritage Dictionary of the English Language* (1969) (defining "taillight" as "[a] red light or one of a pair mounted on the rear end of a vehicle. Also called 'tail lamp.' ").

gives no indication as to the measure of that distance. Both cars were moving and at no point is there a discernable way to determine the relative distance of objects in the video, much less a definitive way to determine how far back Officer Lobbezoo was from defendant's vehicle when both taillights became visible. Further, defendant was driving through a well-lit area for most of the video. The ambient light from the surrounding area made it difficult to discern the distance that defendant's taillights were visible from, and at some points made it hard to see the taillights at all.

Officer Lobbezoo's testimony contradicts Judge Servaas's finding that defendant's taillights were clearly visible from 500 feet. Officer Lobbezoo testified at the suppression hearing that he could not speculate regarding the distance from which defendant's taillights were visible. Judge Jordon heard the testimony and found it credible. Given that the dash-cam video supports this testimony, the Court is "left with a definite and firm conviction that a mistake has been made." *Johnson*, 466 Mich at 497-498. Accordingly, Judge Servaas's finding that both taillights were visible from 500 feet is clearly erroneous. Based on the record produced below, there is simply no way to determine whether the vehicle's taillights were visible from 500 feet.

D.      The Circuit Court Erred by Relying on *Heien* to Vacate

In vacating Judge Servaas's decision, the circuit court held that the U.S. Supreme Court's decision in *Heien*, 574 US at ___; 135 S Ct at 536, insulated the challenged evidence from exclusion. The *Heien* court held that the reasonable suspicion necessary to justify a traffic stop may be predicated upon an officer's reasonable but "mistaken understanding of the scope of a legal prohibition." *Id.* Thus, even if Officer Lobbezoo was incorrect that a dim taillight was a legally sufficient ground for stopping defendant, the officer's belief was a reasonable mistake of law.

Yet, from what source of law would Officer Lobbezoo have gained this reasonable-but-mistaken understanding? Stated another way, where in Michigan's Vehicle Code does it state or is it reasonably inferred that an officer can stop a vehicle based on a taillight that works in some sense, but does not work in another sense—i.e., a dim taillight?

To begin with the most likely source, subsection 686(2) requires that taillights must "be lighted." MCL 257.686(2). Isolated from its context, and then joined with the requirement in a different section that equipment must be "in proper condition and adjustment," MCL 257.683(1), one might conclude that a dim (not fully "lighted") taillight is one that is not in proper condition or adjustment and is thereby illegal under the Vehicle Code.

But is this a reasonable interpretation of the statute? "In considering a question of statutory construction, this Court begins by examining the language of the statute. . . . If the language is unambiguous, judicial construction is precluded." *Macomb Cty Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001) (internal citations omitted). To point out the obvious, nowhere in section 686 can be found the adverb "fully" or similar grammatical modification with respect to the requirement "to be lighted". See MCL 257.686(1), (2).

Moving from what is not in the text to what is in the text, rather than read the phrase "to be lighted" in isolation, consider it in context. See *Macomb Cty Prosecutor*, 464 Mich at 158.

When read in context, it seems clear that subsection 686(2) does not set forth requirements on *how* a taillight must be lighted, but rather, it sets forth requirements *when* a taillight must be lighted: "A tail lamp or lamps . . . shall be wired so as to be lighted *whenever the head lamps or auxiliary driving lamps are lighted*." MCL 257.686(2) (emphasis added.) When the headlamps are lighted, any taillight has to be lighted. But what does it mean "to be lighted"? On that question, subsection (2) is silent. From that silence, however, one need not infer ambiguity.

In fact, one need not scour the Vehicle Code very far for the answer—it is found in the preceding subsection. Specifically, subsection 686(1) requires that a vehicle must have a taillight "which, when lighted as required by this act, shall emit a red light plainly visible from a distance of 500 feet to the rear." MCL 257.686(1). Here, the Legislature set forth the *how* as: red light, plainly visible from 500 feet. And, *when* does the taillight have to be red, plainly visible from 500 feet? It has to be red and plainly visible from 500 feet "*when* lighted as required by this act"—i.e., when a headlamp or auxiliary lamp is lighted. MCL 257.686(2) (emphasis added).

Read together, subsections 686(1) and (2) create a coherent whole: A vehicle must have a taillight, that taillight is considered "lighted" when it is red and plainly visible from at least 500 feet, and that taillight must be lighted every time that a headlight or auxiliary lamp is lighted. Under this reading, a taillight would violate section 686 if (i) the taillight was not red, (ii) it could not be plainly seen from at least 500 feet, or (iii) it did not come on when the headlamps or auxiliary lamps were on. The flip side of this is that an otherwise dim taillight that was red, was plainly visible from at least 500 feet, and was on when the headlamps or auxiliary lamps were on would not violate section 686 and, without more, would not be reasonable grounds for a police officer to stop and inspect a vehicle. This reading of section 686 has the twin virtues of giving effect to both subsections 686(1) and (2) as well as providing a relatively clear, bright-line rule for police officers and courts to follow.

What about the provision in section 683 that equipment on a vehicle must be in "proper condition and adjustment"? MCL 257.683(1). A dim taillight is certainly some evidence that the vehicle is not operating in full accordance with the manufacturer's specifications. Yet, the Legislature did not create with the Vehicle Code an unbounded source of authority for police to stop and inspect any vehicle that somehow falls short of manufacturer specifications. Rather, the Legislature made clear in subsection 683(1) that the provision is expressly limited to "proper condition and adjustment *as required in sections 683 to 711*" of the Vehicle Code. *Id.* (emphasis added). Similar provisions in the code that permit a police officer to stop and inspect a vehicle are likewise tied to specific requirements set forth in the code. See, e.g., MCL 257.715(1) ("Equipment on motor vehicles *as required under this act* shall be maintained *as provided in this act*. A police officer may on reasonable grounds shown stop a motor vehicle to inspect the vehicle . . . ." (emphasis added)). Simply put, the Vehicle Code does not license a police officer to stop and inspect a vehicle for any and all perceived improper conditions and adjustments. A vehicle must be kept in the condition and adjustment expressly required by the Vehicle Code and, for taillights, those requirements are found in section 686.

On this score, the circuit court erred when it concluded that a reasonable police officer could have believed that section 686 provided a reasonable basis to stop defendant. There was no testimony offered during the suppression hearing or at trial that defendant's passenger-side

taillight was not red, not plainly visible from 500 feet, and not operating when the headlamps or auxiliary lamps were operating. Officer Lobbezoo testified, in fact, that he could not tell whether the taillight was visible from 500 feet and the passenger-side taillight did emit light when the headlamps were lighted, as the dash-cam video confirms. As explained above, it is not possible to conclude—one way or the other—whether the taillight was plainly visible from at least 500 feet. Thus, the record evidence does not squarely fit the category of dim taillights that actually violate section 686.

Nor is the language of section 686 so convoluted as to be one of those rare instances where a mistake of law could be considered reasonable. In fact, the Legislature spoke with relative clarity with respect to how a taillight must operate, as explained above. Where a provision, like section 686, does not "irreconcilably conflict" with another provision, or where it is not "equally susceptible to more than a single meaning," there is no ambiguity under Michigan law. *Mayor of City of Lansing v Mich Pub Serv Comm'n*, 470 Mich 154, 166; 680 NW2d 840 (2004) (internal citation and quotation marks omitted). And, where there is no ambiguity in the law, *Heien* does not save an otherwise mistaken understanding of that unambiguous law. See *Heien*, 574 US at __; 135 S Ct at 539-540 ("The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. . . . Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce."); *id.* at ___; 135 S Ct at 541 (Kagan, J., concurring) (explaining that "[i]f the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not." and noting that the U.S. Solicitor General and the State of North Carolina both conceded that such cases should be "exceedingly rare"); *United States v Stanbridge*, 813 F3d 1032, 1037 (CA 7, 2016) ("The statute isn't ambiguous, and *Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute.").

This court did have the opportunity to consider the meaning of subsection 686(2) in *Williams* and a fair reading of that decision confirms that the court found part of the subsection ambiguous. Yet, the *Williams* decision does not support the circuit court's decision here. The *Williams* court looked at the statute in the different context of whether a vehicle with multiple taillights had to have all of the taillights wired so as to be lighted or, instead, just had to have at least one taillight so wired. *Williams*, 236 Mich App at 615. The question faced in that case, in other words, was a binary one: taillight on v. taillight off. The *Williams* court confirmed that the better reading of subsection 686(2) was that a vehicle equipped with two taillights must have two taillights that are lighted when the headlamps or auxiliary lamps are lighted. In this, *Williams* is similar to the statutory construction found in *Heien*.[3]

---

[3] The concurring opinion suggests that there is another way to read section 686—the Legislature "plainly and specifically insisted that *just one* taillight emit a light from" 500 feet. Under this reading, a vehicle could have two or more taillights, all of them would have to be operational (from *Williams*), but only one of them would have to be red and plainly visible from 500 feet. Yet, is it really the case that section 686 is "equally susceptible" to this proposed alternate reading?

The present case is centered on the next logical, though distinct question: When a vehicle has two taillights and both taillights are, in some sense, operational, can the vehicle still violate section 686 when one of those taillights is not, in some other sense, fully operational? Defendant's taillights were both operational in the sense that they were lighted when the headlamps were lighted, but one of them was not fully operational in that the light emitted was significantly dimmer than the other. As explained above, the answer is: Yes, a vehicle with an operating taillight can violate section 686, but only if the taillight is not red, it is not plainly visible from at least 500 feet, or it is not lighted when the headlamps or auxiliary lamps are lighted. Given the Legislature's relatively clear guidance on this question, the circuit court erred in concluding that Officer Lobbezoo made a reasonable mistake under section 686 when he stopped defendant.

---

There are good reasons to conclude that it is not. *First*, this alternate reading would seem to conflict with *Williams*, where the court held that the Legislature meant in section 686 that "all tail lamps intended for use on an automobile would have to be operative in order for the automobile to be in compliance with the Vehicle Code." *Williams*, 236 Mich App at 615. The *Williams* court based its conclusion, in part, on the fact that a different interpretation would have made the words "or tail lamps" in subsection 686(2) nugatory. *Id.* at 614. The same logic applies here, in that the alternate reading would make the words "at least" in subsection 686(1) nugatory. To illustrate, if "just one taillight" had to be red and plainly visible from 500 feet, then subsection 686(1) should have instead read: "A motor vehicle . . . shall be equipped with [] 1 rear lamp . . . which, when lighted as required by this act, shall emit a red light plainly visible from a distance of 500 feet to the rear." The Legislature eschewed this language, and chose instead to use the words "shall be equipped with *at least* 1 rear lamp." MCL 257.686(1) (emphasis added).

*Second*, the alternate reading would necessarily imply that the Legislature wrote subsection 686(2) with the intent that multiple taillights must work together to enhance safety (*Williams*), but, when the Legislature specifically set forth *how* taillights should be lighted, the Legislature set aside any concern about multiple taillights working together in terms of the light emitted (this case). As long as one taillight was red and could be seen from 500 feet, another taillight could, for example, be green and visible from only 10 feet and still satisfy section 686, under the alternate reading. Needless to say, driving behind such a vehicle would be a rather disorienting experience. This reading would undermine, rather than enhance, vehicle safety—a reading at odds with the purpose of the Vehicle Code.

Thus, regardless of whether the alternate reading is a reasonable one, section 686 is not "equally susceptible" to both readings. *People v Hall*, 499 Mich 446, 453-454; 884 NW2d 561 (2016); *People v Gardner*, 482 Mich 41, 50 n 12; 753 NW2d 78 (2008). As explained above, the better reading is the one employed in this opinion, where each word is given effect, each subsection is harmonious with the other, and a bright-line rule of conduct is recognized.

E.    Defendant Potentially Violated Section 683 of the Vehicle Code

While a dim taillight that emits a red light plainly visible from at least 500 feet when the headlamps or auxiliary lamps are on works well enough for purposes of section 686, this is not the end of the inquiry. As noted above, subsection 683(1) of the Vehicle Code prohibits a person from operating "a vehicle . . . that is in such an unsafe condition as to endanger a person." MCL 257.683(1). This provision is separate from the provisions requiring that vehicles be kept in certain condition and adjustment,[4] meaning that a vehicle could satisfy all of the condition and adjustment requirements of the Vehicle Code and yet, if the vehicle is operated in a manner that creates an unsafe condition that endangers a person, that vehicle would still violate subsection 683(1) of the Vehicle Code. MCL 257.683(1).

In this case, the dash-cam video clearly shows that the passenger-side taillight on the vehicle in question was significantly dimmer than the one on the driver-side. As Judge Jordon noted during the suppression hearing, when one taillight is significantly brighter than the other, a dangerous condition may arise because other people may think that the person with the defective taillight was "braking in front of [them] all the time." (M Tr, 62). Add to this the icy, wintery conditions present on the night in question, as Officer Lobbezoo testified, and the fact that defendant was driving in a congested area in the dark of early morning, as confirmed by the dash-cam video, and the potential for danger only increases. This narrow, factual finding by Judge Jordon that defendant's defective taillight created a "dangerous" condition was, by itself, sufficient to justify the stop under MCL 257.683.

Because Officer Lobbezoo witnessed defendant's potential violation of the Vehicle Code, there existed reasonable suspicion to stop defendant. *Whren v United States*, 517 US 806, 813; 116 S Ct 1769; 135 L Ed 2d 89 (1996) (explaining that the reasonableness of a *Terry* stop does not depend upon the actual motivations of the officer involved). Accordingly, there was no Fourth Amendment violation and Judge Servaas erred in suppressing the evidence after the trial. See *Draws v Levin*, 332 Mich 447, 454; 52 NW2d 180 (1952) (stating that the trial court's reasoning does not prevent the reviewing court from affirming on other grounds).

---

[4] Subsection 683(1) reads in full:

A person shall not drive or move or the owner shall not cause or knowingly permit to be driven or moved on a highway a vehicle or combination of vehicles *that is in such an unsafe condition as to endanger a person*, **or** *that does not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment as required in sections 683 to 711*, **or** *that is equipped in a manner in violation of sections 683 to 711*. A person shall not do an act forbidden or fail to perform an act required under sections 683 to 711. [MCL 257.683(1) (emphasis and bold added).]

F.	The Dissent

Finally, as to the dissenting opinion: The dissent agrees with this lead opinion that the stop was not justified under section 686 and, in that respect, a reply is not needed. The dissent disagrees with this lead opinion that the stop was justified under section 683 and, in this respect, a reply is needed. Three brief comments will suffice.

*First*, to the charge of *appellate fact-finding*, the response is—no. Judge Jordan, who heard testimony from Officer Lobbezoo and watched the dash-cam video during the suppression hearing, concluded that the significant difference in brightness between the two taillights created a dangerous condition because a person driving behind defendant could reasonably think that defendant's vehicle was constantly braking. Moreover, the testimony of Officer Lobbezoo and a review of the dash-cam video confirm what one expects to find during January in Michigan— icy, wintery conditions. Taken together, these facts, as found by a trial judge and confirmed by video available to all, fit squarely within section 683's express prohibition against unsafe driving.

As for describing the difference in brightness between the two taillights as "significant,"[5] this is a fair characterization based on the record evidence. The dash-cam video is part of the record, and the video shows the driver-side taillight as very bright and the passenger-side taillight as quite dim. Taken together, "significant" accurately captures the qualitative difference between very bright and quite dim. Moreover, the fact that the passenger taillight was so dim that Officer Lobbezoo initially thought that it was completely out supports this characterization.

In fact, as to the dissent's contention of "pil[ing] supposition upon speculation,"[6] one wonders where in the record Judge Servaas and the dissent find any evidence to show that defendant's dim taillight was actually visible from 500 feet? Officer Lobbezoo testified that he could not speculate as to the distance, and the dash-cam video has no legend, scale, or other means of measuring the distance. Nothing else in the record touches on distance. As explained above, the best that can be said on this record is that the dim taillight became visible at *some* distance.

*Second*, to the charge of *inconsistency*, the response is—again, no. There is nothing inconsistent with recognizing that the Legislature created a bright-line standard with respect to taillights, but then also recognizing that the Legislature included in section 683 a catch-all provision prohibiting a person from driving a vehicle in an unsafe condition that endangers

---

[5] Opinion of SAWYER, J., *infra*, *slip op* at 3. While the dissent accuses the lead opinion of "employ[ing] rather vague generalities" by using the adjective "significant," the dissent is not immune from its own criticism, as it describes the situation as one involving a "*slightly* dimmer" taillight. *Id.* at 1 n 2 (emphasis added).

[6] *Id*. at 3.

others.  MCL 257.683(1).  To the contrary, it would be inconsistent to adhere to the plain meaning of section 686 while ignoring the plain meaning of section 683.

*Third*, to the charge of *legislating from the bench*, the response is—once again, no.  The dissent argues that if a vehicle has equipment that conforms to a specific requirement set forth in the vehicle code, then that equipment cannot, *as a matter of law*, be involved in the operation of a vehicle in an unsafe condition that endangers a person.  More generally, the dissent takes the position that the three prohibitions in subsection 683(1)—(i) "unsafe condition as to endanger a person"; (ii) failure to have equipment as specified in the code; or (iii) having equipment in violation of the code—must be read as mutually exclusive.

From a public-policy perspective, there appears to be nothing inherently illogical with this position.  The Legislature could have enacted this policy into law, and it would have likely been reasonable in doing so.

And yet, the Legislature did not enact the dissent's policy into law.  Michigan courts have long recognized that the Legislature is capable of creating mutually exclusive categories when it chooses to do so.  See, e.g., *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136 n 7; 545 NW2d 642 (1996); cf *Connecticut Nat'l Bank v Germain*, 503 US 249, 253; 112 SCt 1146; 117 LEd2d 391 (1992) (holding that sections of a statute need not be mutually exclusive and in fact may overlap or be redundant in terms of their coverage, provided neither section contains limiting language to the contrary).  A review of section 683 confirms that there is nothing in this section suggesting that the three prohibitions should be read as mutually exclusive.

Nor is there anything absurd about reading the provisions as not mutually exclusive. *Connecticut Nat'l Bank*, 503 US at 253.  The purpose of the Vehicle Code "is to promote traffic safety." *Williams*, 236 Mich App at 614.  To further the goal of traffic safety, the Legislature set forth two provisions in subsection 683(1) requiring that certain equipment meet certain minimum requirements, and, while these provisions do not speak directly about traffic safety, the requirements implicitly further the goal of ensuring safe vehicles.  The Legislature then added a catch-all provision that is explicitly focused on traffic safety—prohibiting the driving of a vehicle in an "unsafe condition as to endanger a person."  Given that subsection 683(1) does not include any "mutually exclusive"-type language; given that it is not uncommon for statutory provisions to have some regulatory overlap; and given that the Vehicle Code is intended to promote traffic safety, there appears to be no good reason to read the provisions of subsection 683(1) as mutually exclusive.

*In sum.*  When confronted with the dissent's admonition by Justice Scalia and Bryan Garner, with a dash of Judge Easterbrook thrown in for good measure, it is best to end with The Bard himself: The dissent doth protest too much, methinks.

Affirmed.


/s/ Brock A. Swartzle