SOPHIA BERGSTROM, ADMINISTRATRIX, ETC., v. HIRAM E. STAPLES AND LYMAN T. COVELL.

*Negligence—Fellow-servants—Directing verdict.*

1. The points upon which a verdict is directed should be stated by the court in his instructions to the jury, but his failure to do so will not be ground for reversal where the record shows that a correct result was reached.

2. In this case the engineer of defendants' saw-mill, by whose action in starting the engine the plaintiff's decedent was killed, is held to have been decedent's fellow-servant, whose negligence, if any is shown, cannot be imputed to the defendants.

Error to Muskegon. (Dickerman, J.) Argued October 9, 1890. Decided October 31, 1890.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*C. O. Smedley (Arthur Jones, of counsel), for appellant, contended:*

1. When the deceased entered into the employ of the defendants, he assumed those risks which were a natural and ordinary incident to the employment from causes open and obvious; but he did not assume risks that were unreasonable or extraordinary, nor risks that were extrinsic to the employment, nor risks of the masters' own negligence; citing *Pantzar v. Mining Co.*, 99 N. Y. 372.

2. There are certain duties which concern the safety of the servant which belong to the master to perform, and he cannot rid himself of responsibility to his servant for not performing them by showing that he delegated the performance to another servant, who neglected to follow his instructions, or omitted to do the duty intrusted to him; citing *Booth v. Railroad Co.*, 73 N. Y. 40.

3. When the defendants sent the deceased into this box to clean off the saw-dust, and the only place to stand while doing this work was on the band-saw wheel, they put him to work in a

dangerous place, and it was their duty to give him warning before the machinery was started, and they cannot say that they delegated the performance of this duty to the engineer, and because he neglected this duty plaintiff cannot recover because it was the negligence of a co-servant; citing *Avilla v. Nash*, 117 Mass. 318; *Wheeler v. Manfg. Co.*, 135 Id. 297; *Electric Co. v. Lubbers*, 11 Col. 505; *Abel v. Canal Co.*, 103 N. Y. 581; *Railroad Co. v. Fox*, 31 Kan. 586.

4. Deceased was not negligent in going down into the box without first setting a signal of danger; citing *Berry v. Railway Co.*, 40 Iowa, 564; and he had a right to depend on the usual signals of warning; citing *Goodfellow v. Railroad Co.*, 106 Mass. 461.

*Smith, Nims, Hoyt & Erwin*, for defendants, contended:

1. The circuit judge in his rulings followed the settled law in this State; citing *Adams v. Iron Co.*, 78 Mich. 271.

GRANT, J. Plaintiff's decedent, her husband, was an employé of defendants in their saw-mill. During the noon hour it was his duty to go down into the box of the lower band-saw wheel and clean out the sawdust. This box, which inclosed the wheel, was constructed with a slanting bottom, so that the sawdust would slide down to the sawdust carrier. It was necessary to stand on the wheel while cleaning off the sawdust. The only access to this box was by climbing down on the wheel, and the only mode of egress was by climbing up the same way. The wheel was eight feet in diameter. The work could only be done while the machinery was motionless, when of course there was no danger.

The deceased entered this box during the noon hour, November 8, 1888, to clean out the sawdust. The engineer started up the engine and machinery while he was there at work, and he was killed. Before starting the engine, the engineer blew the whistle, which was the customary warning to those about the machinery to get out of the way, or, by pulling a rope provided for the purpose, to blow the whistle again as a signal to the engi-

neer not to start the engine. No one gave the signal to the engineer not to start up. Very shortly after starting up, he received a signal to stop, but it was too late to save the life of Bergstrom. Bergstrom had worked in the mill for about a year, and was familiar with the signals, the machinery, and the workings of the mill. During his entire service he had daily performed this work. Two of his co-employés stood near and saw him go into the box, and were in a position to have signaled the engineer not to start up. One of them saw him take off the cover to the box and go down. He testified that he knew that Bergstrom was in the box when the whistle blew, and that he heard him "holler" after the machinery started, and that he then blew the whistle to stop. The other testified that he was 20 feet from Bergstrom when he went into the box; that he was ready to go down stairs when he heard the engineer blow the whistle, and stood with one foot on the first step; that he started for the rope to blow the whistle, but that some other person reached there first and blew it, but the machinery had started. These were the only witnesses who saw Bergstrom go into the box. In their estimates of the time between the blowing of the whistle and the starting of the machinery one says about 15 seconds, and the other half a minute to a minute. Plaintiff insists that it was the duty of the defendants to give deceased sufficient warning before starting the machinery, and the negligence alleged is the violation of this duty. The defendants introduced no evidence, and the court directed a verdict for them.

If there was negligence it was that of the engineer, and he was a fellow-servant of the deceased, for whose negligent act the defendants are not liable. Plaintiff's counsel seek to avoid this rule by the fact that the place was unsafe, and therefore they say the absolute duty to

give sufficient warning followed. But they admit that the place was not unsafe when the machinery was motionless. Many places in these mills are rendered dangerous by the moving machinery, and vigilance is required on the part of the employés to avoid the danger. No claim is made that defendants' mill and machinery were not constructed in the usual and proper manner, nor that they did not employ competent men to run it. The engineer was engaged in the same common employment with the deceased. The engineer in his duty to the deceased was no more the *alter ego* of the defendants than was the deceased their *alter ego* in his duty towards the engineer. Both were competent workmen, the mill properly constructed, the means of signaling sufficient, and the dangers apparent. In providing these things, the defendants had done their whole duty. Each of these men assumed the risk of negligence on the part of the other. Such negligence cannot be imputed to the defendants. Any other rule would be unreasonable, unjust, and therefore unfounded in law.

The circuit judge instructed the jury to render a verdict of no cause of action, without giving the reasons for such instruction. This is not the proper practice. The appellate court is entitled to know on what points the verdict is directed, and the court should state them in its instructions to the jury. The record in this case does not disclose upon what point the court directed the verdict, but, as the correct result was reached, we will not disturb it.

Judgment affirmed, with costs.

CHAMPLIN, C. J., CAHILL and LONG, JJ., concurred. MORSE, J., did not sit.