*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ISABELLE BROURMAN, MAYA CROSMAN, SHAINA MAHLER, AMELIA BROWN, LAUREN LAMBERT, CASSIE MCQUATER, KATHERINE MCMAHAN, and KRISTEN BEECY,

Plaintiffs-Appellants,

v

UNIVERSITY OF MICHIGAN and UNIVERSITY OF MICHIGAN REGENTS,

Defendants-Appellees.

UNPUBLISHED
December 21, 2023

No. 363879
Court of Claims
LC No. 22-000028-MZ

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

This case arises out of numerous alleged instances of sexual assault and sexual harassment perpetrated by Bruce Conforth, a former University of Michigan lecturer, against eight former students. Plaintiffs Isabelle Brourman, Maya Crosman, Shaina Mahler, Amelia Brown, Lauren Lambert, Cassie McQuater, Katherine McMahan, and Kristen Beecy, appeal of right from the Court of Claims order that granted summary disposition in favor of defendants, the University of Michigan and the Regents of the University of Michigan (collectively, UM), under MCR 2.116(C)(8). For reasons stated herein, we affirm the orders of the Court of Claims.

## I. BASIC FACTS

According to plaintiffs, Conforth began assaulting female students in 2005. That year, he assaulted Beecy, who was so traumatized by the assault that she dropped Conforth's class and withdrew from the University. McMahan and McQuater claim that Conforth assaulted and harassed them in 2007. McMahan claims that Conforth assaulted her at a bar by cornering her after she left the bathroom, wrapping his arms around her waist, and inviting her back to his residence to "sleep" with him. McQuatar claimed that Conforth pressured her into having dinner with him, ordered her vodka at dinner (although she was underage), and pressured her to go home with him. When McQuatar refused, he told her that he was disappointed in her. In 2008, McMahan

-1-

filed a complaint against Conforth with UM's Student Relations Department-Sexual Harassment and Assault. This resulted in UM and Conforth signing a "Last Chance Agreement." This agreement required Conforth to leave his door open when he met with students in his office on UM's campus and prohibited him from meeting or socializing with students off-campus. Violating any of the terms of the Last Chance Agreement would result in further disciplinary actions, including possible termination.

Plaintiffs alleged that, despite the Last Chance Agreement, Conforth's inappropriate behavior continued into 2013 and 2014 with Brourman, Crosman, and Mahler. Conforth would communicate inappropriately with the young women via e-mail, text message, and social media. He told Brourman and Crosman that he was Grand Master of the Order of Illuminati, and he created e-mail accounts for fictitious members of the Order that he used to manipulate plaintiffs into having sexual relations with him and to threaten their safety and the safety of their families if they tried to distance themselves from him. Conforth sexually assaulted Brourman and Crosman in his office, and he continued to manipulate and sexually assault Brourman after she graduated and moved back home in 2015. Conforth began sexually harassing Mahler in 2014; Mahler ignored Conforth, but he relaunched his pursuit of a sexual relationship with her in 2015. In the winter 2016, Conforth sexually assaulted Brown in his office. In December 2016, Brown and Mahler filed sexual-harassment complaints with the University's Office for Institutional Equity.

Believing that Conforth violated the Last Chance Agreement and various University policies, UM suspended Conforth, pending an investigation. In February 2017, UM allowed Conforth to retire as part of a settlement agreement. UM did not investigate or issue a report regarding Brown's and Mahler's allegations, and UM continued to allow Conforth access to his campus office until February 25, 2017, and to use his UM e-mail account through July 2017. In December 2020, Mahler contacted UM's Title IX coordinator and asked for a copy of the report from the investigation of her 2016 complaint. She was informed that "Mr. Conforth was advised of the allegations against him and he subsequently acknowledged the allegations and resigned from the University and the investigation was closed. Bruce is no longer affiliated with the University of Michigan."

Plaintiffs alleged in their 11-count complaint that UM should have taken definitive steps to protect students after the 2008 investigation; it should at least have informed students about the Last Chance Agreement and the restrictions placed on Conforth. They alleged that UM failed to adequately investigate and to report on the 2016 allegations and that, had it properly investigated and reported on the allegations, plaintiffs would have known that they had a cause of action against UM arising from UM's failure to enforce the restrictions imposed by the Last Chance Agreement. Plaintiffs further alleged that, at all relevant times, "Conforth was acting within the course and scope of his employment or agency with UM, or in such a manner that UM had actual or constructive knowledge" of Conforth's prior sexual assaults on UM students and his propensity to commit future sexual assaults on UM students. They also alleged that Conforth and UM were acting under "color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or UM."

Plaintiffs originally filed their complaint in Washtenaw Circuit Court, but UM transferred the claims against UM to the Court of Claims. Plaintiffs moved to transfer the case back to the Washtenaw Circuit Court. The Court of Claims returned plaintiffs' claim for monetary damages

for violations of the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., to the circuit court and retained the remaining claims against UM, as well as plaintiffs' equitable-relief claim under ELCRA.

In lieu of answering plaintiffs' complaint, UM moved in the Court of Claims for summary disposition under MCR 2.116(C)(7). Relative to the instant appeal, UM argued that plaintiffs' claims were time-barred because their notices of intent were untimely under MCL 600.6431, that plaintiffs failed to assert a valid fraudulent-concealment claim to toll the notice period, and that plaintiffs' claims failed on the pleadings. Plaintiffs argued in opposition to summary disposition that some of their claims were not governed by the notice requirements in MCL 600.6431 and that, if they were, the Court of Claims should apply the harsh-and-unreasonable-consequences exception to strict application of the notice requirements to avoid divesting plaintiffs of the opportunity to assert their constitutional claims. Plaintiffs further asserted that they had alleged sufficient facts to support a valid fraudulent-concealment claim, that the court should allow plaintiffs to conduct discovery and should set a date for an evidentiary hearing on the issue, and that they had stated valid claims for relief.

After hearing oral arguments, the Court of Claims issued a written opinion granting UM's motion for summary disposition on the basis that plaintiffs' failure to comply with the notice requirement in MCL 600.6431 barred their claims. The court found that plaintiffs' allegations of fraudulent concealment showed that UM was merely silent, not that UM had committed fraudulent affirmative acts or misrepresentations. The Court of Claims reasoned that plaintiffs knew, or should have known, that they had a possible case against UM when the sexual harassment and assaults occurred because they knew that Conforth was employed by UM, that UM held him out to be a fit lecturer, and that the abuse occurred either on UM property or through the use of UM's e-mail server. Internal complaints filed by some of the plaintiffs was evidence that they were aware that Conforth's conduct was wrong and that UM had some responsibility for oversight. Further, plaintiffs' assertions that they were not aware of their claims until the press coverage that occurred on or about April 26, 2021, were belied by the fact that those who filed notices of intent did so nearly two weeks earlier. The court also found that the harsh-and-unreasonable-consequences doctrine did not apply under the circumstance, and it denied plaintiffs' request for discovery. Plaintiffs now appeal.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Pike v Northern Mich Univ*, 327 Mich App 683, 690; 935 NW2d 86 (2019). "A motion under MCR 2.116(C)(8) tests *the legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). The trial court must accept all factual allegations as true and decide the motion on the pleadings alone. *Id*. at 160. The trial court may grant a motion under (C)(8) only when the "claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

B. ANALYSIS

Plaintiffs first contend that the Court of Claims erred by concluding that the fraudulent-concealment allegations in their complaint amounted to "mere silence" rather than to fraudulent affirmative acts by UM. Generally, Michigan and its agencies are immune from tort liability under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, but there are enumerated several exceptions to governmental immunity. See *Rowland v Washtenaw Co Rd Comm'n*, 477 Mich 197, 202-203; 731 NW2d 41 (2007). Even if one of the statutory exceptions applies, a claim against the government must be filed in accordance with the notice provision of the Court of Claims Acts, MCL 600.6431. *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012). "[W]hile MCL 600.6431 does not 'confer governmental immunity,' it establishes conditions precedent for avoiding the governmental immunity conferred by the GTLA, which expressly incorporates MCL 600.6431." *Fairley v Dep't of Corrections*, 497 Mich 290, 297; 871 NW2d 129 (2015).

MCL 600.6431(1) provides:

Except as otherwise provided in this section, a claim may not be maintained against this state unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies.

Moreover, for claims involving property damage or personal injury, the claimant must "file the claim or notice under subsection (1) with the clerk of the court of claims within 6 months after the event that gives rise to the claim." MCL 600.6431(4). The only claims expressly exempted from MCL 600.6431's notice requirements are those for compensation under the Wrongful Imprisonment Compensation Act, MCL 691.1751 *et seq*. MCL 600.6431(5). The notice requirement is a "condition precedent to sue the state," and "a claimant's failure to comply strictly with this notice provision warrants dismissal of the claim, even if no prejudice resulted." *Rusha v Dep't of Corrections*, 307 Mich App 300, 307; 859 NW2d 735 (2014). The failure to comply with the notice requirements of MCL 600.6431 "provides a complete defense in an action against the state or one of its departments." *Fairley*, 497 Mich at 292.

It is undisputed that, absent tolling, none of the plaintiffs in the present case filed timely notices of intent under MCL 600.6431(4). Beecy and Lambert did not file notices of intent, and the Court of Claims ruled that summary disposition in UM's favor was warranted as to them. See *Elia Cos, LLC Univ of Mich Regents*, 511 Mich 66, 75; 993 NW2d 392 (2023) ("[C]ompliance with MCL 600.6431 is required to avoid dismissal of claims against the state."). Plaintiffs have not challenged this ruling on appeal. The remaining six plaintiffs filed written notices of intent on April 13, 2021, well beyond six months after the last alleged incident of sexual harassment or sexual assault. At issue is whether plaintiffs are entitled to toll the notice period because UM fraudulently concealed that plaintiffs had causes of action against UM.

-4-

MCL 600.5855 provides for fraudulent-concealment tolling as follows:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

When MCL 600.5855 applies, it tolls the statutory notice period in MCL 600.6431 as well as the statutory limitations period in regard to claims brought against the state. *Mays v Snyder*, 323 Mich App 1, 43-44; 916 NW2d 227 (2018).

"Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Doe v Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich App 632, 642-643; 692 NW2d 398 (2004) (quotation marks and citation omitted). "The fraud must be manifested by an affirmative act or misrepresentation." *Id*. (quotation marks, citation, and alteration omitted). "For the fraudulent concealment exception to apply, a plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Mays*, 323 Mich App at 39 (quotation marks and citation omitted). Actions that amount to "mere silence" do not constitute fraudulent concealment. *Doe*, 264 Mich App at 645.

An "affirmative" act is one that requires effort. See *Black's Law Dictionary* (11th ed). For example, in *Mays*, 323 Mich App at 21-22, this Court held that the fraudulent-concealment exception would apply to toll the notice period under MCL 600.6431 if the plaintiffs could prove their allegations that the state defendants "actively concealed the information necessary to support plaintiffs' causes of action" by publicly advising Flint water users that the water was safe, despite having knowledge to the contrary, and by discrediting the reports of experts "confirming serious lead contamination in the Flint water system" and "a spike in the percentage of Flint children with elevated blood lead levels" in 2014.

In this case, the Court of Claims determined that plaintiffs' complaint alleged various failures to act on the part of UM, but did not identify any fraudulent affirmative acts or misrepresentations committed by UM. We agree. On appeal, plaintiffs do not point to any allegations in their complaint that identifies affirmative acts rather than failures to act. Instead, they assert that the Court of Claims erred by not considering UM's intent to conceal and interpreting UM's failures to act as "affirmative and intentional decisions to not act." Plaintiffs cite no authority allowing for the presumption of an intent to conceal or allowing them to meet their burden of pleading affirmative acts or misrepresentations with a presumption that UM's nonaction resulted from fraudulent intent. Plaintiffs cite an unpublished decision from the United States Court of Appeals for the Sixth Circuit for its discussion of a state case that determined that the failure to report sexual abuse constituted fraudulent concealment under that state's reporting requirement if the failure was accompanied by evidence of intent to conceal or an active effort to

mislead. See *Gilley v Dunaway*, 572 Fed Appx 303, 307-308 (2014).[1] *Gilley* does not help plaintiffs because plaintiffs have not presented any "*evidence* of intent to conceal or an *active* effort to mislead." See *id*. (emphasis added). Even if UM's silence was designed to avoid disclosure, it cannot be said to constitute the affirmative acts and misrepresentations required to establish fraudulent concealment. See *Doe*, 264 Mich App at 645. Because plaintiffs have not identified any "acts or misrepresentations that comprised [UM's alleged] fraudulent concealment," see *id*. at 643, we conclude that the Court of Claims did not err by determining that plaintiffs had not established that they were entitled to fraudulent-concealment tolling of MCL 600.6431(4)'s notice requirements.

Plaintiffs also contend that the Court of Claims erred by concluding that plaintiffs knew, or should have known, of a possible cause of action against UM at the time they were sexually harassed or assaulted by Conforth. "[F]or a plaintiff to be sufficiently apprised of a cause of action, a plaintiff need only be aware of a 'possible cause of action.' " *Doe*, 264 Mich App at 643. Further, whether a plaintiff knows or should have known all the elements of potential causes of action against a defendant depends on the "entire constellation of facts that were known or should have been known to plaintiff at the time the abuse occurred." *Id*. at 644-645. Here, plaintiffs' allegations show that they knew that they were students; that their teacher was sexually harassing or sexually assaulting them; that he was employed by the University; that he was relying on University resources, such as his classes, his campus office, and his University e-mail account, to commit the misconduct; and that the University did not prevent the harm. Certainly, there can be no doubt that plaintiffs knew or should have known that they had a cause of action against Conforth. And, given that Conforth was using University resources to commit sexual assault and sexual harassment and that the University did not prevent the harm, it seems likely that plaintiffs knew or should have known that they had a possible cause of action against defendants, even if they did not know the details. See *id*. at 647. Moreover, even if plaintiffs did not, or could not have known, that they had causes of action against UM at the time their claims accrued, fraudulent-concealment tolling would apply only if UM "concealed the existence of the claim . . . from the knowledge of the person entitled to sue on the claim . . . ." Plaintiffs have presented no evidence that any alleged lack of knowledge of a claim against UM at the time the misconduct occurred was the result of UM's fraudulent concealment.

Plaintiffs next contend that fraudulent concealment is a fact-intensive inquiry and that, even if the Court of Claims did not conclude that UM's multiple failures constituted fraudulent concealment, the court should have allowed discovery and scheduled an evidentiary hearing. The court denied their request on the basis that they had not explained what evidence they intended to present or how it would change the outcome of this case. The court's decision was not erroneous.

On appeal, plaintiffs speculate that documental evidence and internal communications would "show UM's intent to conceal information regarding Conforth's abuse in order to prevent inquiry into UM and the discovery of any claims against UM." Assuming that such evidence exists, plaintiffs have not shown that obtaining it would change the outcome of the case; they

---

[1] "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

present no authority establishing that the intent to conceal or to avoid disclosure, without fraudulent affirmative acts or misrepresentations, constitutes fraudulent concealment. Plaintiffs rely on statements in *Bufalino v Mich Bell Tel, Co*, 404 F2d 1023, 1027 (CA 6, 1968), and statements made by this Court in *Mays*, 323 Mich App at 45, to support their position that declining their request to permit discovery was error. Plaintiffs' reliance is unavailing. Neither *Bufalino*, nor the Michigan case that it cites, *Draws v Levin*, 332 Mich 447; 52 NW2d 180 (1952), involved a (C)(8) motion for summary disposition filed at the outset of proceedings, and the support that plaintiffs claim from *Mays* arises from a misquotation of our decision.

Lastly, plaintiffs assert that the Court of Claims erred by concluding that the harsh-and-unreasonable-consequences exception did not apply to toll the notice requirements in the present case. The harsh-and-unreasonable-consequences exception has been applied to statutes of limitations when the consequences of strictly enforcing a limitations period were so harsh and unreasonable that it "effectively divest[ed] plaintiffs of the access to the courts intended by grant of the substantive right." *Rusha*, 307 Mich App at 311 (quotation marks and citation omitted). In *Rusha*, this Court did not extend the harsh-and-unreasonable exception to the strict enforcement of the statutory notice requirements of MCL 600.6431. *Id.* at 311-312. This Court saw no need to treat statutory notice requirements for suing the government differently from limitations periods because, although they served different purposes, both were "procedural requirements that ultimately restrict[ed] a plaintiff's remedy, but not the substantive right." *Id.* at 312.

The Court of Claims did not err by declining to apply the harsh-and-unreasonable exception to enforcement of the statutory notice requirements. Plaintiffs again rely on *Mays* to support their position. The context for *Mays* was the Flint River water crisis. The plaintiffs filed their complaint against the government defendants without having filed the notice of intent to file a claim required by MCL 600.6431, and the defendants moved for summary disposition under MCR 2.116(C)(4) (court lacks subject-matter jurisdiction) and (C)(7) (immunity provided by law). The Court of Claims denied the defendants' motion. *Mays*, 323 Mich App at 23-24. Affirming the denial, this Court reasoned that summary disposition "would deprive plaintiffs of access to the courts and effectively divest them of the ability to vindicate the constitutional violations alleged." *Id.* at 35. Also significant were the plaintiffs' allegations that several state actors took affirmative actions to conceal the hazardous nature of the Flint River water, as well as any event that would trigger the running of the six-month period. As a consequence of this alleged concealment, the burden on the plaintiffs to meet the filing requirement would have been more than minimal, as "it would have required clairvoyant recognition of circumstances that the state was working to convince the public did not actually exist." *Id.* at 36 n 9.

As already indicated, the present case is distinguishable from *Mays* because the plaintiffs in *Mays* did, in fact, allege affirmative acts and misrepresentations by which they claimed that the state defendants tried to conceal the plaintiffs' cause of action against the state. In addition, whereas the *Mays* plaintiffs may not have had any knowledge of a possible cause of action because the defendants were actively concealing information that a claim had accrued and that the notice period had begun, *id.*, each plaintiff in the present case knew that Conforth, a University lecturer, had sexually harassed or assaulted them, in some instances using University resources to commit the crimes, and that the University did nothing to prevent the misconduct. "If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of [MCL 600.6431], and in this behalf a party will be held to know what he ought to know." *Doe*,

264 Mich App at 643 (quotation marks, citation, and ellipses omitted). For these reasons, plaintiffs have not established that the circumstances of the present case justify application of the harsh-and-unreasonable-consequences exception to the statutory notice requirements of MCL 600.6431.

In conclusion, for the foregoing reasons, we conclude that the Court of Claims did not err by granting summary disposition in favor of UM. Summary disposition was warranted as to Beecy and Lambert because they failed to file notices of intent under MCL 600.6431. Summary disposition was warranted as to the remaining plaintiffs because their notices of intent were untimely, they failed to allege facts sufficient to toll the notice period under the fraudulent-concealment exception, the harsh-and-unreasonable-consequences exception did not apply, and they gave the Court of Claims no reason to allow them to conduct discovery.

## III. RIGHT TO A JURY TRIAL

Plaintiffs next challenge the ruling by the Court of Claims that they failed to show that they were entitled to a jury trial against the state in the circuit court on their substantive due-process claim for violation of their bodily integrity. We find it unnecessary to address this claim of error because of our Supreme Court's recent holding in *Christie v Wayne State Univ*, 511 Mich 39, 44-45; 993 NW2d 203 (2023), that "the notice requirements of MCL 600.6431(1) apply to all claims against the state, including those filed in the circuit court, except as otherwise exempted in MCL 600.6431 itself." The only claims exempted from MCL 600.6431's notice requirements are those for compensation under the wrongful imprisonment compensation act. MCL 600.6431(5). Because plaintiffs did not comply with the notice requirements in MCL 600.6431, and did not establish grounds for tolling the notice period or for avoiding the strict application of MCL 600.6431, *Christie* would have required dismissal of plaintiff's constitutional-tort claim, regardless of the forum in which plaintiffs pursued the claim. Had we addressed the claim of error, we would have noted that we indicated unequivocally in *Rusha*, 307 Mich App at 305, that the Court of Claims has exclusive jurisdiction over properly alleged constitutional torts against the state.

Affirmed. UM may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Michael J. Kelly